BERTHA E. FEICK, AS EXECUTRIX OF CHARLES A. FEICK, DECEASED, RELATOR, v. HILL BREAD COMPANY ET AL., RESPONDENTS.

Submitted December 6, 1917—Decided April 3, 1918.

1. Where inspection of corporate records is sought by a writ of *mandamus*, the proper practice is to address the writ to the one actually having the custody of the books and records, even though he is merely a ministerial officer, acting under the direction of others.

2. A stockholder may employ an expert accountant, not connected with the corporation, to assist him in making an inspection of the books and records of such corporation.

3. The executrix of a deceased stockholder in a corporation has such an interest in the corporation as to be entitled to an inspection of the corporate books and records, and it is not a necessary preliminary to the exercise of this right that it be requested by creditors of the estate, or authorized by a court.

---

On demurrer to return of alternative writ of *mandamus*.

Before GUMMERE, CHIEF JUSTICE, and Justices PARKER and KALISCH.

For the relator and demurrant, *Pitney, Hardin & Skinner.*

For the respondents, *Frank E Bradner.*

The opinion of the court was delivered by

KALISCH, J.   An alternative writ of *mandamus* requiring the defendant company, and its president, John J. Hill, to show cause why they should not permit the relator, with the aid of an expert accountant, to examine all the books, including books of account and books of the minutes of the proceedings of the directors and stockholders of the company, and all papers and documents in the possession of the company relating to and concerning the business and financial affairs of the company, was directed against them, permission to make such examination having been refused by the defendant company's president.

Although the writ was directed to the defendant company and John J. Hill, its president, the return is made by the company alone, Mr. Hill remaining silent.

To the return made the relator demurred.

1. The defendant company sets up in its return that Mr. Hill, as president, had no authority to permit such an examination as asked for, and that the relator by demurring admits the truth of the statement.   It is manifest that the bare statement in the return, that Mr. Hill had no authority as president, is a mere conclusion of law, and, therefore, the demurrer has not the legal effect contended for by defendant, namely, to admit the truth of the statement.

2. It is said in the return that no demand was ever presented by the relator to the board of directors of the company requesting such permission to examine the books, and it is, therefore, claimed that since this fact is admitted by the demurrer, the relator's right to the relief prayed for is barred. The answer to this is threefold:   (1) It is true that the demurrer admits that no such demand was made, but that fact is immaterial, for it was not necessary, as a basis for the present application.   *Garcin* v. *Trenton Rubber Mfg. Co.,* 60 *Atl. Rep.* 1098; *People* v. *Throop,* 12 *Wend.* 183.   The return in the present case inferentially admits that such a demand in writing was made upon the president of the defendant company.

High on *Extraordinary Legal Remedies,* in his treatise on the writ of *mandamus,* on page 286, section 311, says: "As regards the person to whom the writ should be directed when an inspection of corporate records is sought, the proper practice is to address it to the one actually having the custody of the books and records, even though he is merely a ministerial officer acting under the direction of others, as in the case of a bank cashier acting under a board of directors. In such case the rule applies that the writ should run to the particular person who is to perform the act required, and, the cashier having charge of the books, his refusal to allow their inspection is his individual act, and the writ is therefore properly addressed to him. But there is no impropriety in such a case in directing the writ also to the board of directors." (2) It appears from the return that there was no board of directors qualified to act. (3) The statement that the relator prevented an election is a mere conclusion based upon undisclosed facts. For aught that appears in the return, the prevention of the election was the exercise of a lawful act.

3. It is asserted in the return that the president never denied the relator's right to examine the books personally or with the assistance of Mr. Feick and Mr. Prieth, but refused any accountant or person not connected with the company to examine the books, and has stated that he had no authority to give such permission.

This is clearly an express admission of the very facts upon which the relator bases her application.

The defendant does not attempt to justify the refusal of its president to permit the examination applied for, on the ground of lack of authority in that official to grant it, but, in effect, asserts that the relator is not entitled to such an examination, with the assistance of an expert accountant, not connected with the company.

The common law recognized the right of a stockholder to inspect the books of a corporation where the application is made in good faith and is germane to his rights as a stockholder. *Huylar* v. *Cragin Cattle Co.,* 40 *N. J. Eq.* 392;

*Stettauer* v. *New York-Scranton Construction Co.*, 42 *Id.* 46; *Fuller* v. *Hollander & Co.*, 61 *Id.* 648; *Venner* v. *Chicago City Railway Co. et al.*, 246 *Ill.* 170; 92 *N. E. Rep.* 613; *Weihenmayer* v. *Bitner*, 45 *L. R. A.* 446. See note where cases are collected.

The weight of authority in this country appears to be that a stockholder may employ an expert accountant not connected with the corporation to assist him in making the examination. 7 *Ruling Case Law*, page and section 301.

The underlying reason for this view is well stated in the text: "The possession of the right would be futile if the possessor through the lack of knowledge necessary to its exercise, were debarred of the privilege to procure in his behalf the service of one competent to exercise it."

And in *Huylar* v. *Cragin, supra,* Chancellor Runyon (on *p.* 398), in discussing the right of stockholders, says: "And they are entitled to such inspection, though their only object is to ascertain whether their affairs have been properly conducted by the directors or managers. Such a right is necessary to their protection. To say that they have the right, but that it can be enforced only when they have ascertained, in some way without the books, that their affairs have been mismanaged or that their interests are in danger, is practically to deny the right in the majority of cases. Oftentimes frauds are discoverable only by examination of the books by an expert accountant. The books are not the private property of the directors and managers, but are the records of their transactions as trustees of the stockholders."

It is, therefore, plain in the present case that the relator was not legally obligated to accept the permission claimed by the defendant to have been tendered her, circumscribed as it was by the limitation that she might have the assistance of either Mr. Feick or Mr. Prieth to make the examination, because they were connected with the defendant company, it not appearing that either was an expert accountant competent for the task. But even if the persons designated were competent for the task, it is quite obvious that their selection would defeat the very purpose which was intended to be

accomplished by the investigation; that is to obtain information of the affairs of the company through an independent source, by a disinterested expert accountant.

4. The allegations in the return that full and complete reports showing the condition of the business of the corporation were annually made to its stockholders, including the relator, covering a period of six years, and that the relator, by her representative on the board of directors, had the ·opportunity to inspect the reports and to make copies thereof; and that the book value of the stock of the company is a mere matter of calculation and could be ascertained from the reports, furnish no legal excuse for denying the relator's present application. But, apart from this, it may turn out, upon an examination of the books, that the annual reports made by the company were inaccurate and did not truly represent the business affairs and condition of the company, and hence, the present value of the stock would be more or less affected. Such a possible result indicates not only the propriety but the necessity of the examination asked for by the relator.

5. The defendant company finally concludes its return by asserting that the relator has no personal interest in the shares of stock standing in her name as executrix of the last will and testament of Charles A. Feick, deceased, and that she has not been requested by the creditors of the estate, or authorized by any court, to take this proceeding; and that her object is to have a stranger not connected with the company get information so as to speculate in the stock.

The fact that the relator is the executrix of the Feick estate, without taking into consideration any other rights or interests that she may be entitled to under the will in her own right, makes it plain that she stands in a fiduciary relation to the creditors of the estate, as to the marshaling of assets.

She would be considered highly remiss in the discharge of her duty if she had reasonable grounds to believe that an examination of the books of the company would assist her in getting at the true value of the stock held by her in trust for the benefit of the creditors of the estate and refrained from

taking any action in the matter, and, in consequence, the stock was sold for less than its true value. Neither the consent of the court nor of the creditors of the estate was required in order that the relator may properly make the present application.

The statement made by the defendant that the object of the proceeding is to have a stranger to get information so as to speculate in the stock, is a mere conclusion based upon assumed facts not disclosed, and, moreover, the court can protect the defendant company against any such alleged scheme by supervising the selection of the accountant.

The demurrer is sustained and a peremptory writ of *mandamus* is allowed and directed to issue as prayed for, with costs.