30 N.J. Super. 153 (1954)
103 A.2d 893
MAY M. FEIST, PLAINTIFF, AND AMBROOK INDUSTRIES, INC., PLAINTIFF-RESPONDENT,
v.
JOSEPH DIXON CRUCIBLE COMPANY, A NEW JERSEY CORPORATION, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 15, 1954.
Decided March 20, 1954.
*154 Before Judges EASTWOOD, JAYNE and CLAPP.
*155 Mr. James P. Beggans argued the cause for plaintiffs-respondents (Mr. Richard H. Hughes, on the brief; Messrs. Carpenter, Gilmour & Dwyer, attorneys).
Mr. Thomas V. Jardine argued the cause for defendant-appellant (Mr. Robert Carey, Jr., of counsel; Messrs. Carey, Schenk & Jardine, attorneys).
The opinion of the court was delivered by EASTWOOD, S.J.A.D.
This appeal concerns itself with the refusal of the appellant Joseph Dixon Crucible Company (hereinafter referred to as "Dixon") to permit the respondent-stockholders of Dixon to inspect its stock transfer books.
The complaint of May M. Feist, filed in the Chancery Division of this court, together with all pending motions and other matters, were later transferred to the Law Division. In the Law Division the Ambrook Industries, also a stockholder of Dixon, was added as a party plaintiff.
In substance, the complaint sets forth the ownership of certain shares of stock of Dixon, a demand for inspection of the stock book for the purpose of obtaining a list of the stockholders and soliciting proxies to be voted at the annual meeting and to circularize an offer to purchase their stock holdings.
On the return day of a rule to show cause why Dixon should not be ordered and directed to permit the plaintiff, her agents and attorneys, to examine the stock and transfer books, the matter came on for hearing before the Law Division, pursuant to the provisions of R.R. 4:88-4.
At the conclusion of the argument the court, having considered the affidavits, depositions and briefs of the parties, determined, inter alia, that Ambrook was entitled to examine and make a copy of Dixon's stock and transfer books. A conformable order was entered, from which Dixon appeals.
Considering the grounds of appeal, we think the trial court did not err in admitting Ambrook as a party plaintiff. It was established that Ambrook was the equitable owner *156 of the stock registered in the name of May M. Feist, and was also the owner of 125 shares registered in its name. The proofs show that Ambrook had also caused a demand to be made by its attorney for an inspection of the stock and transfer books, which had been refused by Dixon.
Secondly, we are satisfied that the trial judge did not mistakenly exercise his discretion in refusing to continue the hearing on the application for summary judgment to permit appellant to examine other officers of Ambrook. When interrogated by the court as to what appellant hoped to develop if the testimony of such officers were taken, counsel for the appellant stated: "Unfortunately, I cannot tell everything to you now that may be in their minds, until I have a chance to ask them."
Thirdly, in light of the proofs, it is our conviction that the judgment for inspection of the stock books was warranted. N.J.S.A. 14:5-1 is the section of the Corporation Act relied upon for the right of inspection demanded by Feist and Ambrook. It provides:
"Every corporation of this state shall keep at its principal office the transfer books, in which the transfer of stock shall be registered, and the stock books, which shall contain the names and addresses of the stockholders and the number of shares held by them respectively, open at all times during the usual hours for business to the examination of every stockholder, and for the transfer of stock."
Dixon contends that Ambrook's request for inspection was not made in good faith and for proper purposes, but for speculative reasons detrimental to the other stockholders, the corporation, and its employees, in that it planned to make offers to other stockholders of a price much less than its real value, in order to procure a two-thirds stock control of Dixon so that it may liquidate its assets at a great speculative profit and capital gain. Ambrook denies that its ultimate purpose was to bring about a dissolution of Dixon and thereby receive speculative profits and capital gain. It frankly admits  in fact, it has consistently so stated  that it desires and intends to solicit the stockholders to purchase their stock and thereby obtain control of the company.
*157 We find that Dixon has not established by the proofs that Ambrook's application to inspect the stock books is made in bad faith and for ulterior purposes. On the other hand, it clearly appears that Ambrook's purpose is to solicit the other stockholders to purchase their stock, with the end in view of acquiring sufficient stock to give it control of Dixon. It is reasonable to assume that the officers of Dixon will solicit proxies from the stockholders so that they may retain their control of the corporation. Nor, to accomplish that purpose, would they be precluded from soliciting the stockholders for the sale of their stock. There may be differences of opinion as to the propriety of the motives inspiring Ambrook to acquire control of Dixon. Be that as it may, we fail to discover any statutory proscription thereof, nor do the decisions of our court hold that such purpose is unlawful and the stockholder is precluded from exercising his right of inspection.
In the case of O'Hara v. National Biscuit Co., 69 N.J.L. 198 (Sup. Ct. 1903), where the right of a stockholder to examine the corporate stock and transfer books was at issue, Mr. Justice Garrison, speaking for the court, discussed the question as to whether under the statute the qualified right to inspect, theretofore existing at common law, had been transformed into an unqualified right. Mr. Justice Garrison's discussion of the historical background of this right and its development through succeeding years makes profitable reading. In the O'Hara case, 69 N.J.L., at page 200, it is stated:
"The right to inspect the books that contain the names, addresses, and quantum of interest of holders of shares in a corporation is given to `stockholders'; a term that not only defines the class upon which the right is conferred, but also indicates the capacity in which the right is to be enjoyed, namely, that it must be with respect to the relator's interests as a stockholder, or be germane to his status as such."
In support of its contention on this point, the appellant cites several cases, an examination of which discloses that practically all of them deal with applications of *158 a stockholder to examine books and records of the corporation generally, rather than the stock and transfer books. There seems to be little doubt that the rule applicable to examination of corporate books and records generally is correctly stated in Vernam v. Scott, 12 N.J. Misc. 177 (Sup. Ct. 1934), wherein it was held:
"It seems clear that a stockholder is entitled to examine the books of the company unless it be shown that the examination is not sought in good faith and for some ulterior motive. This is the issue in the case, the defendants having sought by the voluminous testimony to establish that the relator is not acting in such good faith as to be entitled to the assistance of the prerogative writ of this court. Feick v. Hill Bread Co., 91 N.J.L. 486; 103 A. 813, affirmed 92 N.J.L. 513; 105 A. 725."
Vide Bruning v. Hoboken Printing & Publishing Co., 67 N.J.L. 119 (Sup. Ct. 1902); Morris v. United Piece Dye Works, 137 N.J.L. 262 (Sup. Ct. 1948). On the other hand, the rule respecting a stockholder's right to inspection of the stock and transfer books may be found in the former Supreme Court case of Morris v. United Piece Dye Works, supra, wherein Mr. Justice Colie stated:
"The law is settled that a stockholder has a right to inspect the books of the corporation where the application is made in good faith and is for a purpose germane to the applicant's rights as a stockholder. * * * They contest the application on the ground that it is not made in good faith. The burden of proof of bad faith is upon the corporation refusing the right of inspection to a stockholder. Vernam v. Scott, 12 N.J. Misc. 177."
Cf. Feick v. Hill Bread Co., 91 N.J.L. 486 (Sup. Ct. 1918), affirmed 92 N.J.L. 513 (E. & A. 1918); Brown v. Central Home Trust Co., 129 N.J.L. 213 (Sup. Ct. 1942); Rosenbaum v. Holthausen, 9 N.J. Super. 484 (Ch. Div. 1950).
Lacking proof of bad faith on the part of Ambrook in making the application for inspection of the stock and transfer books, it clearly appears that Ambrook is entitled to an order directing Dixon to permit such an inspection.
Judgment affirmed.