## Otis-Hidden Company, et al. v. Scheirich.

(Decided March 12, 1920.)

### Appeal from Jefferson Circuit Court (Chancery Branch, Second Division).

Corporations—Inspection of Corporate Books and Records—Right of Stockholder to Inspect Correspondence—Enforcement of Right —Mandatory Injunction.—A minority stockholder, who has an interest to protect and whose purpose is not shown to be improper or unlawful, is entitled to inspect the correspondence concerning the business affairs of the corporation between its non-resident president and its vice-president and active manager, and on file in the latter's office, and this right, if denied by the officers of the corporation, may be enforced by mandatory injunction.

ARTHUR M. RUTLEDGE for appellants.

HENRY M. JOHNSON and HELM BRUCE for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

The question on this appeal is whether a minority stockholder is entitled to inspect correspondence concerning the business affairs of the corporation, between its non-resident president and its vice president and active manager, and on file in the latter's office.

The question arises in the following way: Plaintiff, H. J. Scheirich, a stockholder in the Otis-Hidden Company, asked a mandatory injunction against the company and its vice president, R. E. Moody, requiring them to permit plaintiff to inspect the correspondence in question. The allegations of the petition are in substance as follows: The Otis-Hidden Company is a Kentucky corporation with its principal place of business in the city of Louisville. R. E. Moody is its vice president and general

manager. Prior to April 10, 1918, plaintiff was the owner of 21.6 per cent of the common stock of the company. Its earnings on the common stock during the year 1916 were over $60,000.00, while its earnings for the year 1918 would be in the neighborhood of $100,000.00. Prior to April 10, 1918, plaintiff's stock was reasonably worth over $100,000.00. W. H. Donner, who resided in Philadelphia, was the owner of 72.8 per cent of the company's stock, and controlled the policy of the company. On April 10th, W. H. Donner called certain loans which he had made to the company in the sum of $150,000.00, and in default of the company's ability to pay, had the company increase its common stock and issue to him said stock at par value. At said time the company's common stock was worth far in excess of its par value, as the company had a large excess, amounting probably to about $100,000.00, to the credit of the common stock. This action on the part of Donner was done with a fraudulent intent to wrongfully convert to himself the company's surplus and common stock, and if the transaction should be permitted to stand, plaintiff's interest in the common stock would dwindle from 21.6 per cent to about 2½ per cent. Donner is contemplating doing other things with respect to and in connection with said company, which will be highly prejudicial to plaintiff. Said Donner, as president, has been directing its affairs from his office in the east by correspondence and letters sent by him to the company and R. E. Moody, its vice president and general manager. In said company's files at its place of business at Louisville, there are original letters, telegrams, etc., sent by Donner to Moody, and in addition thereto, there are numerous records, accounts, tabulations and copies referred to and enclosed with same. These papers all bear on the company's affairs, administration and direction and are of great value to the company. Said correspondence, papers and files were all made by the officers and employees of the corporation and are a part of the records of the company. With the purpose of acquainting himself with the company's affairs, and with the view of determining what procedure it was necessary for him to take in order to protect his interest in the company, he employed attorneys and an expert accountant to make an inspection and examination of the company's books, records, papers and correspondence. While engaged in making the in-

vestigation, they made a demand for the correspondence between the president and the vice president, but inspection thereof was refused, although such inspection was absolutely necessary in order that he might know the true condition of the company and protect his interest therein. Said correspondence will reveal that said Donner has fraudulently forced upon the company a policy which is plainly oppressive to the minority stockholders and the plaintiff, and if denied the right of inspection, plaintiff will suffer great and irreparable injury.

Defendants filed an answer, denying the allegations of the petition and pleading in substance the following facts: The by-laws of the corporation gave to R. E. Moody, its vice president, the entire management of the corporation, subject to the board of directors. W. H. Donner, the president, received no salary and took no active part in the business operation. On March 1, 1918, the authorized common stock was $50,000.00, all of which had been issued, but by written consent of all the stockholders, including the plaintiff, a large portion of the common stock had been surrendered and turned into the treasury, leaving on March 1, 1918, only $17,500.00 worth of common stock outstanding. Of this amount plaintiff was the owner of 37.8 shares. At that time the company was indebted to Donner in the sum of $250,000.00. Because of war conditions, the company was compelled to borrow from local banks large sums of money. The duty of obtaining the money devolved upon R. E. Moody. He found it impossible to borrow from the banks because the indebtedness of Donner was carried in the form of "bills payable" and was regarded as a first charge against the assets of the company. With the view of remedying this difficulty, and for the sole purpose of enabling the company more easily to meet its financial needs and raise additional working capital, Moody suggested that the common capital stock be increased to $200,000.00, and Donner agreed to subscribe for at least $100,000.00 worth of said stock and pay therefor by surrendering and cancelling the company's notes for that amount. On March 6, 1918, the stockholders owning more than two-thirds of the capital stock consented in writing to the increase, and amended articles of incorporation authorizing the increase were duly filed in the Jefferson county clerk's office, and in the office of the

secretary of state at Frankfort. All the stockholders, including plaintiff, were notified of said increase and of their right to subscribe at par for their proportionate part of said increased stock. Plaintiff declined to subscribe, whereupon Donner agreed to loan plaintiff sufficient funds to enable him to pay for his part of the increased stock, but plaintiff declined to accept the offer. On April 29, 1918, plaintiff, through counsel, demanded an inspection of the books, accounts and records of the company. Defendants' officers acceded to this request and plaintiff and his counsel and expert accountant examined all the books, accounts, records, papers and documents connected with the business affairs of the company, with the exception of certain private correspondence and personal letters in the possession of R. E. Moody which had passed between him and Donner, and the inspection of this correspondence was refused. At various times for some years past, Moody had corresponded with said Donner in regard to various matters in connection with the affairs of the company. In these letters, suggestions with regard to the management of the affairs of the company, many of which were not carried out or acted upon, were discussed and considered. Many of them contained criticisms of employees, and comments and suggestions with regard to the office force of the company. "All of them have to do only with the management of the internal affairs of the company, and in nowise affect the rights or interest of the plaintiff as a stockholder in the company." The action was not brought, and was not being prosecuted, in good faith or for any legitimate or proper purpose, but its whole object and intention was to annoy and harass the defendant corporation and its officers, and if possible force W. H. Donner, or some of the other stockholders, to buy plaintiff's stock at an exorbitant price.

Plaintiff filed a reply denying practically all the allegations of the answer and pleading the following facts: Donner did offer to loan plaintiff sufficient money to take his pro rata of the increased common stock, but the sum would have amounted to $43,000.00. Plaintiff's financial condition was such that when the loan matured at the end of six months he would have been unable to pay the loan, and since the loan was to be secured by pledge of plaintiff's stock, Donner would have enforced his lien and would probably have been the only bidder,

and would have obtained plaintiff's interest in the corporation at his own price. It was not true that the action was not brought or was not being prosecuted in good faith, or that its purpose was to harass and annoy the defendant corporation or its officers, or to compel Donner to buy plaintiff's stock at an exorbitant price.

Rejoinder was filed by the defendants, denying certain allegations of the petition.

The only proof taken is the deposition of R. E. Moody, whose testimony was in substance as follows: McMahon, expert bookkeeper employed by plaintiff, asked for certain correspondence which had passed between Donner and witness, who declined to show him the correspondence. This correspondence was in his private office at the company's general office, and consisted of personal letters about his personal connection with the company and the general routine of the management of the company. All of the correspondence did not bear on the company's business, but some of it did. It was a fact that the correspondence also consisted of letters, which he had written to Donner, and Donner to him, and telegrams which had passed between them, and statements which he had sent to Donner and his comments on statements about the company's affairs, as well as Donner's comments thereon. He considered the correspondence as his personal affair, although he admitted that he and Donner corresponded with reference to his personal relation with the company. On cross-examination he stated that he permitted plaintiff and his bookkeeper and attorneys to examine all the other books and records of the company. In his opinion the correspondence between him and Donner could throw no light upon what the company had done in a business way. The correspondence between him and Donner bore upon witness's personal relations with the company, so far as his salary, etc., were concerned. At that time he received a set salary and a commission called a bonus. The correspondence with Mr. Donner was to some extent in reference to the bonus. On re-examination he stated that at the end of the year he would send to Mr. Donner a financial statement of the company's operations for the previous year, or deliver it to him in person. When the board of directors met to examine the report, there were some matters they did not always approve of, and these matters were finally concluded by correspondence. Finally, the

witness stated that the correspondence in his private files related to the result of the company's business, and especially to his connection and compensation under his bonus contract. On final hearing, the chancellor granted plaintiff the relief prayed for and the defendants appeal.

Our statute simply provides that every corporation shall keep at its principal office a book containing the names and post office addresses, and the number of shares held by each stockholder, and that this book shall at all times during business hours be subject to the inspection of all stockholders, or persons doing business with the corporation. Section 546, Kentucky Statutes. That being true, the statute does not cover the right of inspection in a case like this, and we must look to the common law rule on the subject.

A stockholder in a corporation has, in the very nature of things, and upon the principles of equity, good faith and fair dealing, the right to know how the affairs of the company are conducted, and whether the capital, of which he has contributed a share, is being prudently and profitably employed, and to inspect the books of the corporation for the purpose of obtaining such knowledge. 7 R. C. L., p. 322; Martin v. Bienville Oil Works Co., 28 La. Ann. 204. The right of inspection rests upon the fact of ownership. The books and property of the corporation really belong to the shareholders, and the reality cannot be overthrown by the fiction of law that a corporation is an artificial person or entity apart from its members. Those in charge of its affairs are merely the agents of the shareholders, who are the real owners of the property, and when one of them seeks an inspection of the corporate books, records or property, he is but seeking an inspection of his own property. Indeed, with reference to the right of inspection, the relation of a shareholder to the corporation has been likened to that of a partner to the firm. 7 R. C. L., p. 323; Guthrie v. Harkness, 199 U. S. 148, 50 L. Ed. 130; Huylar v. Cragin Cattle Co., 40 N. J. Eq. 392-398, 2 Atl. 274. According to the English doctrine, a stockholder, in the absence of a statute or other instrument conferring the right, has no right to an inspection of the corporate books for the purpose of acquiring knowledge of facts upon which to create a dispute, but there must be a defined and distinct dispute

already in existence, with reference to which the right of inspection is demanded. In re Burton, etc., Co., 31 L. J. Q. B. 62; Bank of Bombay v. Suleman Somji, 99 L. T. Rep. N. S. 62. That does not necessarily mean that a suit should have been instituted, but it is sufficient if there is an existing dispute to be settled by reference to the books. However, this doctrine has not been adopted generally in the United States, the rule here being that a stockholder, as such, has a right to inspect the books and records of the corporation where his sole object is to inform himself as to the manner in which the corporate business is being conducted. 7 R. C. L., p. 327; 14 C. J. 856; Huylar v. Cragin Cattle Co., *supra;* People, ex rel Ludwig v. Ludwig, 126 App. Div. 696, 111 N. Y. S. 94; Hodder v. George Hogg Co., 223 Pa. 196, 72 Atl. 553; Venner v. Chicago City Ry. Co., 246 Ill. 170, 92 N. E. 643, 137 A. S. R. 229  20 Ann. Cas. 607.

At common law the right of inspection covers all the books and records of the corporation; 14 C. J. 859; Lewis v. Brainerd, 53 Vermont 519. But the word "record" is not used in the narrow sense of minutes of official action taken by the board of directors, but has been held to include the documents, contracts and papers of the corporation. People v. Thropp, 12 Wen. 185; Stone v. Kellogg, 165 Ill. 192, 46 N. E. 222, 56 A. S. R. 240; Swift v. Richardson, 7 Houston (Dela.) 328, 40 A. S. R. 127. Here, the correspondence was between the non-resident president who was the controlling stockholder, and the vice president and general manager, who had entire charge of the business. While the answer denominates the correspondence as private, yet in referring to the letters composing the correspondence, it says that "all of them have to do only with the management of the internal affairs of the corporation." And Mr. Moody, the vice president, though regarding the correspondence as his own private affair, admitted that he had no correspondence with the president except that which pertained to the affairs of the Otis-Hidden Company, and that portions of this correspondence bore on the salary and bonus which he received as an official of the company. It is a rare thing that all the transactions of a corporation are clearly shown by its records of official action. There must of necessity be many transactions which cannot be clearly understood except by reference to various documents, papers and correspondence on file with the cor-

poration. Clearly, the stockholder's right to inspect his own should not be confined merely to official action. He is as much concerned with the internal management of the company's affairs, on which its success as a business enterprise depends as he is in the official action taken by the board of directors. We therefore conclude that all of the correspondence in question, which relates to the business affairs of the corporation, is subject to inspection by plaintiff, who has an interest to protect, and whose purpose is not shown to be improper or unlawful, and this right, if denied by the officers of the corporation, may be enforced by mandatory injunction.

Judgment affirmed.