In the Matter of the Application of RICHARD REID ROGERS, Petitioner, for a Mandamus Order against THE AMERICAN TOBACCO COMPANY, Respondent.*

Supreme Court, New York County, March 13, 1931.

*Richard Reid Rogers*, in *sua persona*.

*Chadbourne, Stanchfield & Levy*, for the respondent.

TOWNLEY, J. This is an application for a mandamus order against the American Tobacco Company, its secretary, assistant secretary, treasurer, assistant treasurer and president or other appropriate officer who has the custody of the records of the corporation, asking to inspect the minutes of two meetings of the board of directors, the minutes of the stockholders' meeting of July 28, 1930, the charter of the company and any amendments thereof, an original list of officers and employees to whom a distribution of 56,712 shares of common stock " B " was approved, salaries paid to each officer and employee participating in the aforesaid distribution of stock, and any other benefits in the form of group insurance and otherwise received by officers and employees.

The plan adopted by the American Tobacco Company over the opposition of the applicant was of such a nature that the proportion of plaintiff's holdings in the company was or was likely to be seriously altered. There is no evidence before me of any bad

* Affd., 233 App. Div. 708.

faith on the part of the plaintiff in desiring to know the full details of this plan and to know the identity of the persons who would benefit by, and to what extent each of them would benefit by, it. I can think of no circumstances under which a stockholder would have a clearer right to a full disclosure by the directors of the nature and effect of their actions. I can do no better than cite from the opinion of Mr. Justice BIJUR in *Farmers' Loan & Trust Co.* v. *Pierson* (130 Misc. 110, 120, 121): " Perhaps these trustees are under a misapprehension that the mere fact that they are directors of a corporation deprives them of the right or even forbids them to tell the affairs of the company to the real stockholders, their beneficiaries under the trust. But stockholders are entitled to know all about the affairs of their corporation. There are, of course, utilitarian considerations and pragmatic reasons why the directors of a corporation cannot devote their entire lives to an uninterrupted narration to separate stockholders of the minute details of the affairs of their corporation. Practical difficulties involved in such situations are readily solved by the courts through the application of ordinary common sense. But the right of the stockholders to know about their own business — for they are the real owners — can hardly be questioned. [*Matter of Steinway*, 159 N. Y. 250; *Guthrie* v. *Harkness*, 199 U. S. 148; *Klotz* v. *Pan-American Match Co.*, 221 Mass. 38; 108 N. E. 764; *Matter of Wygant*, 101 Misc. 509; *Sage* v. *Culver*, 147 N. Y. 241, 247; *Otis Hidden Co.* v. *Scheirich*, 187 Ky. 423; 219 S. W. 191; *People ex rel. Manice* v. *Powell*, 201 N. Y. 194, 201; *Matter of Fitch*, 160 id. 87, 95; *Hale* v. *Mason*, Id. 561.] The directors occupy a very real and broad fiduciary relation to the stockholders. (*Strong* v. *Repide*, 213 U. S. 419, 431; *Bosworth* v. *Allen*, 168 N. Y. 157.) * * * There may be occasions when the disclosure of a particular fact or a particular incident may from the business standpoint be temporarily inexpedient. There are cases also where it is plain that information is sought in bad faith or for ulterior purposes other than the good of the corporation or its stockholders. Such exigencies are dealt with daily in the ordinary course of the administration of the law. In this particular case there is not the remotest suggestion that the information is sought for any improper purpose, or that the communication of the facts to the *cestuis que* trust will delay or interfere with any business or project of the corporation."

The most serious objection made by respondent is that the Supreme Court has no jurisdiction " to compel an inspection of the books of a foreign corporation," and my attention is drawn to *Matter of Rappleye* (43 App. Div. 84; appeal dismissed, 161 N. Y. 615). An examination of the *Rappleye* case reveals " that a proper

case for the exercise of the court's discretion had not been made out." The opinion, however, as dictum, discussed the question of jurisdiction and laid down the rule for this department that the Supreme Court has no jurisdiction to issue a mandamus to examine the books of a foreign corporation duly authorized to do business in the State of New York. It is quite clear that the dismissal of the appeal by the Court of Appeals did not mean that the Court of Appeals approved of the discussion in the opinion below of the jurisdictional question, since it had been specifically held that the Appellate Division was actually passing upon a question of the proper exercise of discretion by a justice at Special Term. I, therefore, feel that the problem raised in the *Rappleye* case has not yet been squarely decided in this State.

The Court of Appeals in *Travis* v. *Knox Terpezone Co.* (215 N. Y. 259, 264) discussed the problem of jurisdiction over foreign corporations and said: " To trace in advance the precise line of demarcation between the controversies affecting a foreign corporation in which jurisdiction will be assumed and those in which jurisdiction will be declined, would be a difficult and hazardous venture. A litigant is not, however, to be excluded because he is a stockholder, unless considerations of convenience or of efficiency or of justice point to the courts of the domicile of the corporation as the appropriate tribunals." (See, also, 44 Harvard Law Review, 439.) In *People ex rel. Solomon* v. *Brotherhood of Painters* (218 N. Y. 115, 119), SEABURY, J., speaking for the Court of Appeals, laid down the following proposition: " When a foreign corporation accepts a license to do business in this state * * * it may be treated as a domestic corporation to the extent of rendering it subject to the writ of mandamus." And in that very opinion *Matter of Rappleye* is cited as supporting this statement of the law. It must, therefore, be assumed that the Court of Appeals interpreted the *Rappleye* decision as depending upon the fact that the corporation was not authorized to do business in New York. Whether, as respondent urges before me, this was a misinterpretation of the facts of the *Rappleye* case is immaterial. The important thing is that the Court of Appeals has laid down a principle which differs with the holding in the *Rappleye* case, assuming that respondent's interpretation of it is correct. Indeed, the dictum in the *Rappleye* case depends on an old-fashioned idea of an abstract entity existing only in New Jersey, an idea the application of which to modern corporate conditions is fraught with hardship and inconvenience. The soundest legal opinion of the present day is to the effect that a corporate form, foreign or domestic, represents a mode of doing business. (See *Farmers' Loan & Trust Co.* v. *Pierson, supra.*) As

late as *Matter of People (Russian Reinsurance Company)*, decided February 10, 1931 (255 N. Y. 415), the Court of Appeals, by CARDOZO, Ch. J., has reiterated the declaration that the test for decisions of questions such as that before me is a consideration of convenience and efficiency, irrespective of abstract questions of the scope of power.

There is no question in my mind that the convenience both of petitioner and of respondent dictates that the books and records which are in New York city should be examined there. Another reason urged why the order should not be granted is the anomalous one that if a board of directors has done its duty as well as the present directors of the American Tobacco Company have performed theirs, stockholders may not inquire into any plans they may have to benefit employees, considering themselves as employees. It is sufficient answer that the directors are nevertheless, regardless of the magnitude of their success, in the strictest fiduciary relation to the stockholders and must make a full disclosure of what profits they would make out of any scheme submitted by them for the approval of the company.

The final point made by the respondent in opposition to the granting of this motion is the propounding of an apparent dilemma to the effect that since the plaintiff has served a complaint, either his is a private action, in which case a mandamus order will not be granted (See *Matter of Taylor*, 117 App. Div. 348), or one that is not to enforce a private right, in which event there is no necessity for a mandamus, since the information may be secured in the action already instituted. The most that respondent claims for his theory that there will be no mandamus when the information may be secured through other remedies is that the application will be denied unless the right is clear. (See *Matter of Donner-Hanna Coke Corp.*, 212 App. Div. 338; affd., 241 N. Y. 530.) As I have said, I can imagine no circumstances under which the stockholders' privilege of demanding a full disclosure by the directors can be more clear. An examination of the complaint shows beyond doubt that the action started is not to enforce a private right, but is in the nature of a derivative action to enforce the rights of all stockholders.

Motion for peremptory mandamus order is granted. Settle order.