José V. Usera, Petitioner and Appellant, *v.* Jorge Bird Arias et al., Respondents and Appellees.

No. 4919.   Argued January 15, 1930.—Decided July 31, 1931.

*H. G. Molina* and *M. León Parra* for appellant.   *Arturo Aponte* for appellees.

Mr. Justice Wolf delivered the opinion of the Court.

José V. Usera applied to the district court for a mandamus to enforce his alleged right as a stockholder under sections 12 and 20 of the Corporation Law (Comp. St. 1911, secs. 418 and 426) to examine the stock and transfer books of the Fajardo Sugar Company. After a hearing at which

evidence was introduced by both parties, the district court quashed an alternative writ previously issued, and dismissed the action.

Section 12 requires that the stock and transfer books of corporations organized under local law shall be kept at a principal office in the island of Porto Rico "for the inspection of all who are authorized to see the same and for the transfer of stock."

Section 20 reads in part as follows:

"Every corporation organized under this act shall keep at its principal office in the Island of Porto Rico transfer books, in which the transfer of shares of stock shall be registered, and stock books which shall contain the names and addresses of the stockholders and the number of shares held by them, which shall at all times during the usual hours of business be opened to the examination of any stockholder."

Every bona fide stockholder, therefore, has a prima facie right to examine the stock and transfer books. By the weight of authority in the United States a petition for mandamus to enforce the alleged right may be denied in a proper case, on a satisfactory showing by defendant, and in the exercise of a sound discretion by the trial judge. 38 C. J. 796, section 453; note to *Otis-Hidden Co.* v. *Scheirich,* 22 A.L.R. 19, 24.

There must, however, be such a satisfactory showing.

There was evidence tending to show that some months before the institution of the present proceeding a rival concern had invaded territory previously controlled through leases and grinding contracts with the landowners by the Fajardo Sugar Company. Under these leases the lessee was paying a rental of ten to twelve dollars per acre. By the payment of twenty dollars or more per acre for the same land this competitor, at the time of the trial, had annexed some three thousand acres of land theretofore tributary to the Fajardo Sugar Company's mill.

Farr & Company (sugar brokers, stock brokers, members of certain syndicates for the promotion and carrying out of certain projects, and for the purpose of issuing and selling and trading securities in connection therewith) were the New York agents of the competing corporation. Usera was a member of the firm of Farr & Company, in so far as certain matters in Puerto Rico were concerned.

About the time that the Fajardo Sugar Company began to lose its lease-holds, Farr & Company obtained ten shares of the Fajardo Sugar Company stock and asked for a list of stockholders showing the names, addresses and number of shares held by each stockholder, and later demanded in writing an opportunity to examine the stock book in the New York offices of the corporation. At the time of the first request, Mr. Jack Farr, a member of the firm, was asked whether he needed "such list for purposes of trading or otherwise, for purposes of satisfying certain personal needs of the firm of Farr & Company in order to be able to advise his customers or the people in general as to whether they should buy or sell Fajardo stock or trade in their present holdings of Fajardo stocks that his firm was personally interested in selling." He replied that that was the sole purpose of his request, or in other words that he needed the list "for trading purposes." He was then offered a list showing the names of the stockholders with their addresses. During previous years Farr & Company had been satisfied with such a list. On this occasion Mr. Farr said he felt that as a stockholder of the Fajardo Sugar Company of Porto Rico he was entitled to get a list showing also the number of shares each stockholder held. He was then reminded that in the past he had been satisfied with a list showing only the names and addresses of stockholders, and that there had been no change since then as to the form of his business except that in the meantime he had become "connected with Mr. Walker of Puerto Rico, who had some very close financial dealings with the United Porto Rico Sugar Company, of

which Mr. Walker is president." In reply to this, Mr. Farr threatened to bring an action at law.

Shortly thereafter the ten shares of stock were transferred to Mr. Usera and he instituted proceedings in Puerto Rico. A history of the first two of these proceedings may be found in *Usera* v. *Bird et al.,* 40 P.R.R. 27, 31, and *Arias* v. *Usera,* 38 F. (2d) 235.

In a deposition, Mr. George Bird Arias, vice-president and general manager of the Fajardo Sugar Company, stated that Usera's object was to obtain a complete list of stockholders with the number of shares held by each, for the purpose of delivering such list to Farr & Company, and that this statement was based not only on a letter which Bird had received from the president of the company but also on Usera's testimony to that effect as a witness on the stand.

If one scans the list of cases reviewed in the monographic note to *Otis-Hidden Co.* v. *Scheirich, supra,* we do not think one will find a case where mandamus was refused on the kind of showing that exists in this record. In *Guthrie* v. *Harkness,* 199 U. S. 156, the court said:

" . . . The writ should not be granted for speculative purposes or to gratify idle curiosity or to aid a blackmailer, but it may not be denied to the stockholder who seeks the information for legitimate purposes. *In re Steinway,* 159 N. Y. 250; Thompson on Corporations, sec. 4412 *et seq.*"

Usera denied that he wanted to see the books for speculative purposes. Speculative purposes, as we understand the phrase, means something different from the facts disclosed. It does not include the attempts of a firm to obtain either the rented lands or stock of a rival concern. Such attempts or similar ones may seem inimical to the persons in control of a corporation, but they seem to us as legitimate competition.

In any event, to resist the application for mandamus a showing tantamount to a charge of fraud or conspiracy should be spread before the court. The burden of showing

an undue, fraudulent or illegal motive falls upon the defendant and it was not met by the corporation before us.

I am authorized to state that Mr. Justice Texidor agrees with the result in this case and that Chief Justice Del Toro dissents.

The judgment appealed from must be reversed and another rendered ordering the defendants to place at the disposition of the petitioner the original stock and transfer books in order that they may be examined by the petitioner during office hours on working days and for other purposes not inconsistent with this opinion.

Mr. Justice Hutchison dissented.