Elfand v Adams (2024 NY Slip Op 24289)

[*1]

Elfand v Adams

2024 NY Slip Op 24289

Decided on November 18, 2024

Supreme Court, New York County

Kingo, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on November 18, 2024
Supreme Court, New York County

Jonathan C. Elfand, et al, Plaintiff,

against
Eric Adams, et al, Defendant

Index No. 101111/2024

Plaintiffs- pro se
Eric Adams/NYC DOF/Anthony Miranda- Jessica Katzen
New York/Governor Kathy Hochul- Noam Lerer

Hasa A. Kingo, J.

The following papers, numbered to 1-12, were read on this application to/for Injunctive Relief
OSC — Elfand Affirmation — Verified Complaint — Exhibits A-K No(s) 1-4
State's Memorandum of Law — Lerer Affirmation — Exhibits A-D No(s) 5-7
City's Memorandum of Law — Katzen Affirmation — Exhibits A-G No(s) 8-10
Elfand Reply Affirmation — Amendment Reply Affirmation No(s) 11-12
Upon the foregoing documents, Plaintiffs move, by order to show cause, for declaratory and injunctive relief. Defendants the City of New York (the "City") and the State of New York (the "State") separately cross-move to dismiss the complaint. For the reasons set forth herein, Plaintiffs' motion is denied, both cross-motions are granted, and the complaint is dismissed.
BACKGROUND
On March 31, 2021, New York State passed the Marihuana Regulation and Taxation Act ("MRTA"), to "regulate, control, and tax marihuana" through a regulatory regime with requirements for licensing, labelling, and testing of cannabis and cannabis products (Cannabis Law § 2, et seq.). The legislation legalized adult-use of cannabis and created the State Office of Cannabis Management ("OCM") to regulate adult-use, medical, and hemp cannabis (id.). The Cannabis Law provides the following relevant provisions regarding the sale of cannabis and cannabis products:
1. No person shall cultivate, process, distribute for sale or sell at wholesale or retail or deliver to consumers any cannabis, cannabis product, medical cannabis or cannabinoid hemp or hemp extract product, or any product marketed or labeled as such, within the [*2]state without obtaining the appropriate registration, license, or permit therefor required by this chapter unless otherwise authorized by law.
1-a. No person shall engage in an indirect retail sale irrespective of whether such person has obtained a registration, license, or permit issued under this chapter.
(Cannabis Law § 125 [1], [1-a]).
As defined by the statute, "person" means "an individual, institution, corporation, government or governmental subdivision or agency, business trust, estate, trust, partnership or association, or any other entity" (id. § 3 [40-a]).
The statute also contains the following relevant definitions regarding cannabis sales:
46. "Retail sale" means to solicit or receive an order for, to keep or expose for sale, and to keep with intent to sell, made by any licensed person, whether principal, proprietor, agent, or employee, of any cannabis, cannabis product, cannabinoid hemp or hemp extract product to a cannabis consumer for any purpose other than resale.
46-a. "Indirect retail sale" means to give any cannabis, cannabis product, cannabinoid hemp, hemp extract product, or any product marketed or labeled as such by any person engaging in a commercial business venture or otherwise providing or offering goods or services to the general public for remuneration for such goods and/or services, where any such cannabis, cannabis product, cannabinoid hemp or hemp extract product, or any product marketed or labeled as such, accompanies (a) the sale of any tangible or intangible property; or (b) the provision of any service, including but not limited to entry to a venue or event, or a benefit of a membership to a club, association, or other organization.
47. "Retailer" means any person who sells at retail any cannabis product, the sale of which a license is required under the provisions of this chapter.
55. "Wholesale" means to solicit or receive an order for, to keep or expose for sale, and to keep with intent to sell, made by any licensed person, whether principal, proprietor, agent, or employee of any adult-use, medical-use cannabis or cannabis product, or cannabinoid hemp and hemp extract product for purposes of resale.
(Cannabis Law § 3 [46]-[47]).
After several unlicensed cannabis shops opened in New York, MRTA was amended in April 2024 to provide additional enforcement authority for state and local authorities to inspect unlicensed cannabis retailers (Lerer aff, exhibit C). As amended, the Cannabis Law authorizes any city or county to "adopt a local law authorizing an officer or agency to conduct regulatory inspections of any place of business located within the county or city . . . not listed on the directory" maintained by the OCM of "the names and locations of persons licensed or registered [] to engage in retail sales" (Cannabis Law § 131 [3][b], 3 [11]). The Cannabis Law also gives the State authority to inspect and seal businesses engaged in cannabis sales and impose civil penalties for unauthorized sales (Cannabis Law §§ 10 [8], 11 [3], [5], 132 [1][b], 138-b [4]).
Contemporaneously, the New York City Code was amended to authorize the New York City Sheriff to "conduct regulatory inspections of any place of business . . . where cannabis, cannabis product, or any products marketed or labeled as such, are sold, or offered to be sold, where no registration, license, or permit has been issued pursuant to the cannabis law" (Administrative Code of City of NY § 7-552 [a]). The New York City Code also establishes a civil penalty for violations of Cannabis Law § 125 [1] or [1-a] (Administrative Code of City of NY § 7-551 [a]). The Administrative Code also contains provisions authorizing sealing of [*3]unlicensed cannabis businesses and seizure of cannabis (Administrative Code of City of NY § 7-552).
The Elfand Organization, LLC does business throughout New York City as Empire Cannabis Clubs ("Empire"), a "private membership club" offering "a cannabis social and experience space," with several locations throughout New York City and a cannabis delivery service (verified complaint at 1). Empire operates a business model whereby individuals 21 years and older may purchase cannabis and cannabis products (collectively, "cannabis products") after purchasing a daily or monthly membership (Empire Cannabis Clubs, Frequently Asked Questions, available at shop.empirecannabisclubs.com/faq/# [last accessed October 28, 2024]). Daily and monthly memberships cost $15 and $30, respectively (Empire Cannabis Clubs, Membership, available at shop.empirecannabisclubs.com/how-our-memberships-work/# [last accessed October 28, 2024]). Plaintiffs assert that cannabis products are offered to members "at cost" (verified complaint at 3). Neither the Elfand Organization, LLC nor Empire is a licensed retailer or wholesaler under the Cannabis Law.
Between May and September 2024, the New York City Sheriff's Office executed warrantless inspections of five Empire locations pursuant to the Cannabis Law and the parallel provisions of the New York City Code (City mem in opp at 8-11). During the inspections, the Sheriff's Office issued summonses and sealing orders for the locations and seized cannabis and cannabis products (Katzen affirmation, exhibit C). Following each of the inspections, hearings were scheduled at the Office of Administrative Trials and Hearings ("OATH"). Empire did not appear at any of the OATH hearings.
Jonathan C. Elfand ("Elfand") is an owner and employee of Elfand Organization, LLC. On September 11, 2024, Elfand commenced this proceeding by filing the summons and complaint (NYSCEF Doc No. 1). The complaint also designates 12 additional named individuals and 62 unnamed plaintiffs, who are all purportedly Empire employees (together with Elfand, "Plaintiffs"). The complaint seeks a declaratory judgment establishing that (i) the [New York] Governor's Budget Bill Part G, Cannabis Law § 10 (8), 11 (3) & (5), 132 (1)(b), 131 (3)(a), 138-b (4), Chapter 42 of the Rules of the of the City of New York § 42-04, and New York City Administrative Code § 7-551 and 7-552 are facially unconstitutional and void, (ii) preliminary and permanent injunctions against these provisions, and (iii) a temporary restraining order "stopping the statutes at issue from being used to commit any further unconstitutional violations against the Plaintiffs and their places of employment" (verified complaint at 27).
On September 16, 2024, Plaintiffs filed the instant order to show cause seeking an order of the court that declares the statutes cited in the complaint "facially unconstitutional and all actions, fines, and all other sanctions [ ] void from the beginning," "stopping the use of the listed statutes, codified city laws and regulations, from being used to do any warrantless searches and seizures against Empire," and to return all seized property (order to show cause at 1-2). The order to show cause also sought a temporary restraining order enjoining the New York City Sheriff's Department, the New York City Police Department ("NYPD"), and "any agents, officers or affiliates acting on their behalf" from enforcing the statutes cited in the complaint, but this court declined to issue the temporary relief.
In support of his motion, Elfand cites to Penal Law § 200.00 (3) for the proposition that Empire does not engage in the sale of cannabis because its "cannabis products are obtained by [Empire] club members at cost" and, therefore, Empire "does not receive compensation for the [*4]transfer of cannabis" (verified complaint at 3).[FN1]
Penal Law § 200 (3) states as follows:
Cannabis; definitions
3. For the purposes of this article, "sell" shall mean to sell, exchange or dispose of for compensation. "Sell" shall not include the transfer of cannabis or concentrated cannabis between persons twenty-one years of age or older without compensation in the quantities authorized in paragraph (b) of subdivision one of section 222.05 of this article.
Elfand offers no explanation why he relies on the Penal Law definition for "sell" rather than the Cannabis Law definitions for "Retail Sale" or "Indirect Retail Sale" (Cannabis Law §§ 3 [46, 46-a]). There has been no allegation that Empire or Elfand were charged with any infraction under the Penal Law.
Elfand also challenges the constitutionality of the cannabis regulatory scheme, arguing that "the place specified to be searched is designated as an unlicensed, unregistered, and non permitted [sic] place of business, thus the search cannot be used to detect real administrative violations for the purpose of furthering the goals of 'any' regulatory scheme" (verified complaint at 9). Elfand further argues that "[c]ommon sense should allow the understanding that if the business to be searched doesn't have the ability to be regulated, aka a business supposedly running unlawfully, then the knowledge of how the business soperates or condition of its premises couldn't be known, thus it cannot fit within any regulatory scheme" (id. at 10).
The State, on behalf of itself and Governor Kathy Hochul, opposes the motion and cross-moves to dismiss the complaint pursuant to CPLR § 3211 (a)(2) for lack of subject matter jurisdiction, pursuant to CPLR § 3211 (a)(7) for failure to state a cause of action, or, in the alternative, for summary judgment and for a declaratory judgment that Cannabis Law § 131 (3) and New York City Administrative Code Chapter 5-A §§ 7-552 and 522 are facially constitutional. In support of the cross-motion, the State argues that Governor Hochul is not a proper defendant, that Elfand and the remaining Plaintiffs lack standing, that Elfand cannot bring claims on behalf of the LLC or the other individual defendants, and that the Constitutional challenge to the laws fails.
The City, on behalf of Mayor Eric Adams, the New York City Department of Finance, and Anthony Miranda, as New York City Sheriff, oppose and move to dismiss pursuant to CPLR § 3211 (a)(2) and (a)(7). In support of their motion, the City argues that plaintiffs lack standing to bring the action, the action is barred because Plaintiffs have not exhausted their administrative remedies, the administrative challenges lack merit, Plaintiffs fail to state a constitutional claim, and that Plaintiffs cannot satisfy the requirements for a preliminary injunction.
DISCUSSION
As a threshold issue, the City and State raise procedural and substantive issues related to standing that must be addressed before reaching the merits of the motion (Soc'y of Plastics Indus., Inc. v Cnty. of Suffolk, 77 NY2d 761, 769 [1991] [When raised, standing "must be considered at the outset of any litigation"]). Both defendants cross-move to dismiss the complaint on the grounds that Elfand and other Empire employees are not proper plaintiffs [*5]because the harm alleged—lost investment, revenue, income, benefits, and goodwill—were suffered by Empire, not the Plaintiffs (City mem in support at 12; State mem in support at 8). In response, Elfand argues that he and the remaining Plaintiffs have standing because they suffered direct harm in the form of lost wages and were subjected to illegal searches of their person and seizures of their personal property during the inspections of Empire locations.
The complaint interposed in this action alleges numerous factual allegations related to the enforcement actions taken against Empire, including inspection and subsequent sealing of Empire locations and seizure of Empire property. The complaint alleges various harm Empire suffered as a result of the enforcement actions, including monetary and employment losses. The relief sought includes a temporary order restraining the City from "taking any actions, official or otherwise to implement or induce the implementation of the warrantless searches and seizures that are putting the future existence of the Plaintiff's company in jeopardy and putting its multitude of Plaintiff staff members in clear economic peril," an injunction against informant of the relevant statutes, declaration that the statues and sanctions imposed on Empire "be found void," and return of property seized from Empire. The order to show cause seeks similar relief. Given the allegations and relief sought, Empire is indisputably a necessary party in this action because its legal rights and obligations are the subject of the litigation (see CPLR § 1001 [a] ["Persons who ought to be parties if complete relief is to be accorded between the persons who are parties to the action or who might be inequitably affected by a judgment in the action shall be made plaintiffs or defendants"]). Nevertheless, Empire is notably absent from the list of plaintiffs named in the complaint. Instead, the Plaintiffs named in this action include Elfand, as "Owner/Operator/Employee of Elfand Organization LLC (DBA Empire Cannabis Clubs)," 12 other named Empire employees, and 62 unnamed Empire employees.[FN2]

Despite Empire's absence, Plaintiffs contend that they have standing to maintain this suit because the enforcement actions against Empire have "jeopardized the livelihood of all Plaintiffs" (verified complaint at 4). Elfand also asserts that, as a member of the LLC, he has "the ability to argue certain claims because certain actions directly affect [him] personally" [*6](Elfand amended reply affirmation at 1). Finally, Elfand argues that he should be permitted to pursue his claims against the City and State because "his personal constitutional rights were violated by himself being arrested and his personal property seized when law enforcement officers entered [Empire]," because he intends to reopen at least one Empire location, putting him at "future risk of arrest and seizure of his property," because "he personally invested monies into [Empire] and the LLC guaranteed return of his investment, which makes the damage to [Empire's] goodwill a direct injury to himself," and because the seizures of Empire's property "also directly affected his ability to financially care for his family's well being at this time because he stopped receiving a paycheck for his employment" (Elfand amended aff at 3-4). Relying on H & M Trading Co. LLC v. Jordache Ltd. (49 Misc 3d 1213[A] [1015]), Elfand invokes principles of corporate law concerning shareholder actions to assert that he has standing to assert claims on behalf of Empire by virtue of a shareholder derivative suit or by direct action.
"The doctrine of standing is an element of the larger question of justiciability and is designed to ensure that a party seeking relief has a sufficiently cognizable stake in the outcome so as to present a court with a dispute that is capable of judicial resolution" (Sec. Pac. Nat. Bank v Evans, 31 AD3d 278, 279 [1st Dept 2006]). "[A] court has no inherent power to right a wrong unless thereby the civil, property or personal rights of the plaintiff in the action or the petitioner in the proceeding are affected" (Mental Hygiene Legal Serv. v Daniels, 33 NY3d 44, 50 [2019], citing Society of Plastics Indus. v County of Suffolk, 77 NY2d 761, 772 [1991]). "Related to this principle is a general prohibition of one litigant raising the legal rights of another" (id.). Where standing is raised, "a party challenging governmental action must meet the threshold burden of establishing that it has suffered an 'injury in fact' and that the injury it asserts 'fall[s] within the zone of interests or concerns sought to be promoted or protected by the statutory provision under which the [government] has acted'" (id., quoting New York State Assn. of Nurse Anesthetists v Novello, 2 NY3d 207, 211 [2004]). The requirement "necessitates a showing that the party has an actual legal stake in the matter being adjudicated" and has suffered a cognizable harm that is not tenuous, ephemeral, or conjectural but is sufficiently concrete and particularized to warrant judicial intervention (id. [internal quotes and citations omitted]).
Applying these principles, it is readily apparent that Plaintiffs lack standing to maintain this action on the basis of their employment with Empire. No enforcement actions are alleged to have been taken against any of the Plaintiffs individually. Rather, the enforcement actions in question were taken against Empire, and the alleged harm, including the sealing of Empire locations and resultant loss of revenue and goodwill are direct harms exclusive to Empire. The indirect loss of employment and income suffered by Empire employees are insufficient to confer standing to challenge the actions taken against Empire. Even where an individual is closely affiliated with a corporation, as in the case of Elfand, incidental injury to the corporation does not confer standing to sue on the basis of injury to the corporation (MatlinPatterson ATA Holdings LLC v Fed. Express Corp., 87 AD3d 836, 840 [1st Department 2011] ["The fact that an individual closely affiliated with a corporation (for example, a principal shareholder, or even a sole shareholder), is incidentally injured by an injury to the corporation does not confer on the injured individual standing to sue on the basis of either that indirect injury or the direct injury to the corporation"]). Thus, harm to their employment status is not sufficient to confer standing on Plaintiffs in this action.
Elfand's status as an owner of Empire or member of the LLC is also insufficient to confer standing. By statute, "[a] member of a limited liability company is not a proper party to [*7]proceedings by or against a limited liability company, except where the object is to enforce a member's right against or liability to the limited liability company" (Limited Liability Company Law § 610; Mail Boxes Etc. USA, Inc. v Higgins, 281 AD2d 176, 176 [1st Dept 2001] ["no merit" to argument that corporation could appear through an authorized officer]). This is a reflection of the principle that an LLC, like a corporation, is a distinct legal entity with its own rights and obligations under the law (Michael Reilly Design, Inc. v Houraney, 40 AD3d 592, 593-594 [2d Dept 2007] ["An LLC, like a corporation or voluntary association, is created to shield its members from liability and once formed is a legal entity distinct from its members"]). Just as an individual citizen has no standing to enforce the rights of another citizen, a shareholder or owner lacks standing to enforce the rights and obligations of a business entity (see Serino v Lipper, 123 AD3d 34, 39 [1st Dept 2014]). Moreover, as a distinct legal entity, an LLC must appear by counsel (CPLR § 321 [a]; see also Matter of Sharon B., 72 NY2d 394, 398 ["When the party to an action is a fictional person—a legal entity with limited liability—the general rule is that it cannot represent itself but must be represented by a licensed practitioner, whether outside counsel or staff counsel, answerable to the court and other parties for [their] conduct in the matter" [1988]; Michael Reilly, 40 AD3d at 593-594 ["Accordingly, like a corporation or a voluntary association, the LLC may only be represented by an attorney and not by one of its members who is not an attorney admitted to practice in the State of New York"]).
Elfand's reliance on H & M Trading v. Jordache fares no better. A shareholders' derivative action permits a shareholder or group of shareholders to seek recovery for an injury to a corporation or LLC where the entity has failed to act on its own behalf to seek redress for the injury (Business Corporation Law § 626; Tzolis v Wolff, 10 NY3d 100, 104-105 [2008]). A derivative claim, and any subsequent recovery, belong to the entity (Auerbach v Bennett, 47 NY2d 619, 631 [1979] ["Derivative claims against corporate directors belong to the corporation itself "]; Yudell v Gilbert, 99 AD3d 108, 114 [1st Dept 2012]). It is black letter law that a stockholder has no individual cause of action against a person or entity that has injured the corporation" (Serino, 123 AD3d at 39-40). "This is true notwithstanding that the wrongful acts may have diminished the value of the shares of the corporation, or that the shareholder incurs personal liability in an effort to maintain the solvency of the corporation, or that the wrongdoer may ultimately share in the recovery in a derivative action if the wrongdoer owns shares in the corporation" (id.). Accordingly, loss of investment or guarantees do not entitle Elfand to enforce the rights on the LLC (Serino, 123 AD3d at 41 ["the lost value of an investment in a corporation is quintessentially a derivative claim by a shareholder"]).
Moreover, before the shareholder may proceed with a derivative suit, they must make a demand of the corporation to commence the action on its own behalf or must demonstrate that such a demand would be futile (Business Corporation Law § 626 [c]; Tzolis, 10 NY3d at 108-109; LNTC Loft, LLC v Hudson Opportunity Fund I, LLC, 154 AD3d 108, 113 [1st Dept 2017] "it has been held necessary for a plaintiff suing derivatively on behalf of an LLC to allege presuit demand or demand futility, by analogy to section 626(c) of the Business Corporation Law"]). A derivative plaintiff must be represented by counsel (Park v Song, 61 Misc 3d 1047, 1049-1050 [Sup Ct, NY County 2018]). Assuming arguendo, that a shareholder derivative suit could be commenced to challenge administrative enforcement, none of the necessary preconditions have been met here. Elfand offers no explanation why Empire is not named as a plaintiff in this action, nor has he advised the court regarding whether there are other members of the LLC or of their positions with respect to the enforcement actions taken against Empire.
An exception to the general bar of shareholder suits, a direct claim, "exists where the wrongdoer has breached a duty owed directly to the shareholder which is independent of any duty owing to the corporation" (H & M Trading, 49 Misc 3d at *2, citing Serino, 123 AD3d at 39. "A plaintiff asserting a direct claim seeks redress for injury to him or herself individually" (Yudell, 99 AD3d at 114]). For example, direct claims have been permitted to enforce a shareholder's right to inspect corporate books and records (Rogers v Am. Tobacco Co., 143 Misc. 306 [Sup Ct, New York County 1931], affd sub nom. Rogers v the Am. Tobacco Co., 233 AD 708, 249 [1st Dept 1931]) or to compel payment of a declared dividend (Indep. Lead Mines Co. v Kingsbury, 175 F2d 983 [9th Cir 1949], see also Gordon v Elliman, 306 NY 456, 460 [1954]). In each circumstance, the shareholder was permitted to proceed with a direct action to enforce their shareholder rights. By contrast, Elfand posits that he may proceed with a direct action to enforce his civil rights under the Fourth Amendment to the United States Constitution and under the New York Constitution. However, constitutional rights are "personal rights which . . . may not be vicariously asserted" (Rakas v Illinois, 439 US 128, 133-134 [1978]). Thus, Elfand cannot challenge the enforcement actions taken against Empire on the basis of an alleged violation of his own right to be free from unreasonable search and seizure.[FN3]
He also cannot challenge the enforcement actions on the basis of a violation of Empire's expectation of privacy (see e.g., New York v Burger, 482 US 691, 712-713 [1987]; Lo-Ji Sales, Inc. v New York, 442 US 319, 329 [1979]), because that is a claim exclusive to Empire.[FN4]

Having considered the arguments presented, it is the determination of this court that neither Elfand nor the 73 other purported Empire employees have standing to maintain this action, for the reasons set forth above. "[T]he standing analysis is, at its foundation, aimed at advancing the judiciary's self-imposed policy of restraint, which precludes the issuance of advisory opinions" (Cmty. Bd. 7 of Borough of Manhattan v Schaffer, 84 NY2d 148, 155 [1994]). Whereas Plaintiffs lack standing to maintain this action, and the real party in interest, Empire, is not a party, the court cannot reach a determination on the merits. Therefore, the complaint must be dismissed.
Accordingly, it is
ORDERED that the motion for a temporary and permanent injunction is denied; and it is further
ORDERED that the City and State cross-motions to dismiss are granted, and the [*8]complaint is dismiss in its entirety.
This constitutes the order and decision of the court.
DATE November 18, 2024
Hasa A. Kingo, J.S.C.

Footnotes

Footnote 1:Although Elfand's not supported by a memorandum of law or affirmation containing legal arguments, the motion seeks the same relief set forth in the verified complaint. Therefore, the court has considered the legal arguments set forth in the verified complaint and expressed at oral argument held on October 15, 2024 for the purpose of this motion.

Footnote 2:Notably, only Elfand signed the verified complaint, as required by the CPLR and the Rules of the Chief Administrator of the Courts (see CPLR Rule 2101 [d]; 22 NYCRR § 130-1.1a). The failure to sign a complaint is not a trivial defect. The signature serves as an acknowledgment that the contents in the document are not frivolous, the matter was not obtained through illegal conduct, and the matter was not obtained in violation of Rule 4.5 of the Rules of Professional Conduct (22 NYCRR § 130-1.1a [b][1-2]). The Rules of the Chief Administrator mandate striking of the unsigned paper where the omission of signature is not corrected promptly after being called to the attention of the attorney or party (22 NYCRR § 130-1.1a [a]). In this case, the 73 additional plaintiffs did not sign the complaint and have not otherwise appeared in the action. Elfand, who is not an attorney, cannot appear on their behalf (Judiciary Law § 478; Lanzuter Benevolent Ass'n v Altman, 160 AD3d 575, 575 [1st Dept 2018] ["It shall be unlawful for any natural person to practice or appear as an attorney-at-law or as an attorney and counselor-at-law for a person other than himself or herself in a court of record in this state"]). As such, the court has no way of discerning whether the 12 named and 62 unnamed Empire employees consented to the commencement of the action in their names or otherwise wish to proceed as plaintiffs. On this basis alone, the 73 non-appearing plaintiffs must be dismissed from the action.

Footnote 3:
 Additionally, as plead, the complaint does not contain any causes of action for violations of Elfand's civil rights, nor does it plead factual allegations necessary to maintain such causes of action, even when accepting all of the allegations in the complaint as true and according the plaintiff the benefit of every favorable inference (Leon v Martinez, 84 NY2d 83, 87-88 [1994]).

Footnote 4:Curiously, Elfand suggests that this court should disregard the holding of the United States Supreme Court in New York v Burger (482 US 691) and instead focus on the earlier holding of the New York Court of Appeals in People v. Burger (67 NY2d 338 [1986]). Whereas the United States Supreme Court holding reversed the Court of Appeals holding in Burger, this court is bound by the most basic tenants of jurisprudence to follow the United States Supreme Court holding.