THE STATE, EX REL. JOSEPH W. O'HARA, v. THE NA-
TIONAL BISCUIT COMPANY AND JAMES B. VREDEN-
BURGH, REGISTERED AGENT.

Argued November 11, 1902—Decided February 24, 1903.

1. The right to examine the stock and transfer-books of corporations
   is, by the thirty-third section of the General Corporation act of
   this state (*Pamph. L.* 1898, *p.* 409), accorded to stockholders in
   their capacity as such; hence, in the enforcement of such right
   by *mandamus*, it must appear that the right which the relator
   seeks to exercise is germane to his *status* as a stockholder.
2. A statutory provision originally enacted under the title of "An
   act to prevent fraudulent elections in incorporated companies and
   to facilitate proceedings against them" will have the limitation
   imposed by such title impressed upon it, notwithstanding its re-
   enactment in subsequent revisions of the law under the title of
   "An act concerning corporations," and hence, notwithstanding the
   generality of its language, does not extend the right of the stock-
   holder to examine corporate books beyond that accorded to him
   at common law, or entitle him to the remedy by *mandamus*, save
   as a discretionary writ.

On rule to show cause why a *mandamus* should not issue
to compel the defendant corporation and its registered agent
in this state to permit the relator to examine its stock and
transfer-books during ordinary business hours.

The testimony established the following facts: The relator
was, on October 11th, 1892, the registered owner of five shares
of the common stock of the defendant corporation. On that
day, during ordinary business hours, he applied to James B.
Vredenburgh, Esquire, the registered agent of the said corpo-
ration, to be allowed to examine the stock and transfer-books
of the said company, stating that he (the relator) represented
a claim against a certain man, by virtue of legal proceedings
in the State of Ohio, and that his object in seeking to examine
the said books was to find out whether this man owned or
had recently transferred shares of stock of the said corpora-
tion. The relator's right to examine the said books for this
purpose having been denied, this rule to show cause was

allowed on · October 13th and filed on October 16th, 1902, and on October 17th, 1902, a certain amended certificate of incorporation of said company was filed in the office of the secretary of state.

Before Justices GARRISON and GARRETSON.

For the relator, *John S. Parker* (of the New York bar).

For the defendant, *Albert C. Wall.*

· The opinion of the court was delivered by

GARRISON, J. This application involves the question whether the qualified right of a stockholder to inspect the books of his corporation, as that right existed at common law, has, with respect to stock and transfer-books, been transformed into an unqualified right by force of the thirty-third section of the Corporation act of this state. *Pamph. L.* 1898, *p.* 409. At common law such restrictions as were imposed upon this right, whether as to mode of procedure or matter of substance, were judicial regulations incident to the exercise of a discretionary power over a topic not covered by specific legislation. It is not perceived that the enactment of such legislation infringes upon any prerogative recognized under our judicial system. If the legislature has conferred upon all stockholders an absolute right to inspect certain corporate books for all purposes, the duty of the court is to enforce such right by its writ of *mandamus.* The rule of the common law with respect to the right of stockholders to obtain, by *mandamus,* an inspection of corporate books is correctly stated in the opinion delivered in this court in the case of *Bruning* v. *Hoboken Printing and Publishing Co.,* 38 *Vroom* 119. The relator does not deny the discretionary nature of the writ at common law, or that this discretionary character still obtains in this state, save as it has been altered by the legislature. His contention is that, with respect to the examination of stock and transfer-books, the legislature has conferred upon stockholders an absolute right that abrogates the judicial dis-

cretion normally incident to the writ in question. The statutory provision upon which this claim is rested is the first clause of section 33 of "An act concerning corporations" (Revision of 1896, as amended by *Pamph. L.* 1898, *p.* 409), which is in these words: "Every corporation shall keep at its principal and registered office in this state the transfer-books in which the transfer of stock shall be registered, and the stock-books, which shall contain the name and address of the stockholders, the number of shares held by them respectively, which shall at all times during the usual hours for business be open to the examination of every stockholder."

I do not find in this language a legislative grant broad enough to cover the plaintiff's contention, or discover in it any purpose to dispense with the judicial discretion incident to the enforcement of its provisions. The right to inspect the books that contain the names, addresses and *quantum* of interest of holders of shares in a corporation is given to "stockholders," a term that not only defines the class upon which the right is conferred, but also indicates the capacity in which the right is to be enjoyed, namely, that it must be with respect to the relator's interests as a stockholder, or be germane to his *status* as such. If this is the correct interpretation of this language, it affords no support for the relator's contention that it confers upon him a right superior to, and in excess of, that obtainable under the settled practice of the discretionary proceeding that he has invoked. If, however, instead of interpreting the language of the legislative grant, we pass to its construction, a like effect must be given to it, so far as this relator is concerned.

The provision in question first appeared as a statute on December 8th, 1825, under the title of "An act to prevent fraudulent elections by incorporated companies and to facilitate proceedings against them." *Harr.* 112. Under this title it was continued in the Revised Statutes of 1846. *Rev. Stat., p.* 139. In the revision of 1874 it was transferred to and re-enacted as section 36 of "An act concerning corporations." *Rev., p.* 183. In 1896 it was again re-enacted in the revision of that year as section 33 of "An act concerning corpora-

tions," omitting the words "for thirty days prior to any election of directors," and, without further modification, was continued in the amended act of 1898. *Pamph. L., p.* 409.

The effect to be given to this course of legislation is definitely settled by the decision rendered in the Court of Errors and Appeals in the case of *Hendrickson* v. *Fries,* 16 *Vroom* 555. The statutory provision under review in that case was "every warrant of attorney for confessing judgment which shall be included in the body of any bond, bill or other instrument for the payment of money shall be void and of no effect; and such bond, bill or other instrument shall have the same force, and no other, as if the said warrant of attorney had not been incorporated therein." *Rev., p.* 81, § 1.

The contention of the plaintiff in error in that case was that this statute, standing in unqualified terms as part of a general act, laid down a general rule with respect to its subject-matter. In disposing of this contention adversely, Mr. Justice Depue, delivering the opinion of the court, said:

"The statutory provision in question was passed in 1799 as section 13 of an act entitled 'An act to regulate the practice of courts of law.' *Rev. L., p.* 415. It was continued in the Practice act in the revision of 1846. *Rev. Slat., p.* 931. In the revision of 1874 it was transferred to and re-enacted as section 1 of 'An act directing the mode of entering judgments on bonds with warrants of attorney to confess judgments.' *Rev., p.* 81. Under the provision of our constitution the title of a statute is not only an indication of the legislative intent, but is also a limitation upon the enacting part of the law. It can have no effect with respect to any object that is not expressed in the title. Applying this canon of construction, I think it is clear that this statute must be construed to be a mere regulation of the practice in our own courts."

Inasmuch as the limitation to the "practice in our own courts" is derived entirely from the title under which this statute was originally passed, and is not referable to the title under which it was re-enacted, the doctrine of the decided case is that, where a statute is originally passed under a title

that limits its provisions, the re-enactment of such provisions in subsequent revisions of the laws, under a title that has no such limiting effect, will not remove the limitation imposed by the original title.

In fine, the rule established by Fries v. Hendrickson is that a legislative enactment limited in its operation by force of the title under which it was originally passed will continue to be impressed with such limitation, notwithstanding its re-enactment in subsequent revisions of the law under a title that imports no such limitation. Applying this canon of construction, which is binding upon this court, to the section of the revised Corporation act under review, we must hold that the limitation imposed upon it by the title under which it was originally passed followed it through its subsequent transferences and re-enactments, so that, under the title of "An act concerning corporations," it is still to be construed as if it stood under the title of "An act to prevent frauds in the elections of incorporated companies and to facilitate proceedings against them." Thus construed it does not extend the rights of stockholders beyond those customarily accorded to them at common law, and affords no ground for the claim that the discretionary nature of the proceeding now invoked has been abrogated or in anywise disturbed. The result is that, whether we resort to interpretation or to construction, the relator has not shown himself to be entitled to the writ for which he asks.

If the relator so desires, the finding of facts prefaced to this opinion may be treated as the defendant's return to an alternative writ of *mandamus* to which the relator has demurred; in which case error would be assignable upon a judgment overruling such demurrer. For this purpose an application to the court is necessary. *Hoos* v. *O'Donnell,* 31 *Vroom* 35.