RAMCO OPERATING COMPANY f/k/a
Ramco Holding Corp., Petitioner,

v.

The Honorable J. Michael GASSETT,
Respondent.

No. 84543.

Supreme Court of Oklahoma.

Feb. 14, 1995.

Corrected Dissenting Opinion of
Opala, J., filed March 13, 1995.

John N. Hermes, Drew D. Webb, McAfee & Taft, Oklahoma City, for petitioner.

R. Tom Hillis, Shane M. Egan, Boone, Smith, Davis, Hurst & Dickman, Tulsa, for respondent.

SUMMERS, Justice.

The RAMCO companies ask us to prohibit enforcement of a District Court order requiring RAMCO to open up its corporate books

and records. We assume original jurisdiction and grant the writ of prohibition as sought. Okla. Const. Art. VII § 4.

A New York court rendered a judgment in excess of three million dollars in favor of U.S. Trust and against Robert E. Yaw. Yaw is one of four shareholders of RAMCO. Pursuant to Yaw's pledge of RAMCO stock to U.S. Trust the latter has possession of Yaw's certificates of RAMCO stock.

U.S. Trust brought its judgment to the District Court of Tulsa County. See 12 O.S. 1991 §§ 719–726, Uniform Enforcement of Foreign Judgments Act. U.S. Trust entered into an agreement with Dynamic Energy Sources, Inc. (Dynamic) whereby Dynamic agreed to purchase Yaw's stock from U.S. Trust. Dynamic requested U.S. Trust to have a subpoena duces tecum issued requiring RAMCO to produce its books and records, including the copies of reserve studies relating to mineral properties owned or leased by the RAMCO Companies. U.S. Trust relied upon 12 O.S.1991 § 848 [1], and a subpoena duces tecum was issued requiring RAMCO, as a non-party witness, to produce those records sought by Dynamic.

RAMCO claims that Dynamic is a competitor, and that release of its corporate books and records, particularly the reserve reports, will damage RAMCO. Dynamic claims it is not a competitor, and has agreed not to release the RAMCO information to others. RAMCO provided audited financial statements on the companies, but declined to provide other records, particularly the copies of reserve studies.[2] Additionally, in response to a garnishment summons RAMCO stated that it was not indebted to Yaw and that it had no property of Yaw. No claim has been made that Yaw directed the fiscal affairs of RAMCO or commingled his personal assets with those of the corporation. The trial court required RAMCO to produce the corporate records, precipitating this application for a writ.

The New York judgment is not in the record before us. The parties state that it is for money in the amount of $3,203,400.67. None of the parties have claimed that the judgment ordered the sale of the stock, and no special execution or attachment on the stock has issued from the Tulsa County proceeding. See 12 O.S.1991 §§ 732, 841, 902.[3] The proceeding in the trial court is not for the purpose of a public judicial sale of the property.[4] U.S. Trust states that it "is attempting to execute upon Yaw's interests in RAMCO by selling Yaw stock which is in U.S. Trust's possession."

U.S. Trust does not cite or rely upon any provision of the Uniform Commercial Code for its discovery of the records. It relies, basically, upon its status as a pledgee of the stock, and asserts that it should have the same inspection rights as a stockholder.

■ Our statutes clearly recognize that a "shareholder of record" may seek certain corporate records. 18 O.S.1991 § 1065(A). The inspection must be for a proper purpose. *Id.* at § 1065(C)(2)(b). The purpose must be "reasonably related to such person's interest as a shareholder." *Id.* at § 1065(B). If ac-

---

1. 12 O.S.1991 § 848:
   Witnesses may be required, upon the order of the judge, to appear and testify upon any proceedings herein provided in the same manner as upon the trial of an issue.

2. The record indicates that a corporate document, or a portion thereof, has been, or will be, made available to U.S. Trust which reflects the value of the stock as determined by RAMCO.

3. See 12 O.S.1991 § 732, (defining three types of executions); 12 O.S.1991 § 841, (any non-exempt interest of judgment debtor is subject to payment of judgment); 12 O.S.1991 § 902, (when judgment is not for the recovery of money or real property it may be enforced by attachment).

4. Judicial application of a debtor's goods, chattels, and real property to a judgment is effectuated by a public sale. See 12 O.S.1991 § 757, (sale of goods and chattels by public sale); 12 O.S.1991 § 764 (public notice of sale of realty); *Okmulgee Motor Sales Co. v. Prentice*, 371 P.2d 723, 726 (Okla.1962), (debtors have a right to have a judicial sale made as advertised). *Cf. Goldsby v. Juricek*, 403 P.2d 454 (Okla.1965), (constructive trust created when unlawful transaction requiring withdrawal of bid depressed the amount received in judicial sale). Private sales are authorized in several contexts. *See e.g., Cate v. Archon Oil Co., Inc.*, 695 P.2d 1352, 1355 (Okla.1985), (comparing private sales pursuant to Uniform Commercial Code and public sales pursuant to 12 O.S.1981 §§ 757, 764); 58 O.S. 1991 § 388, (private sale of personalty by executor or administrator); 30 O.S.1991 §§ 4–762, 4–764 (private sale of property of ward).

cess is denied after the statutory procedure for access has been followed a shareholder of record may apply to the District Court for an order to compel inspection. Section 1065, however, confers no right to a pledgee for inspection of the corporate records. In *Hoover v. Fox Rig & Lumber Co.*, 199 Okla. 672, 189 P.2d 929, 932 (1948) we said that a statutory right to inspect is an incident of stock ownership.

Does U.S. Trust, **as a pledgee**, have a common law right to inspect the corporate records? We conclude it does not. At common law a stockholder was entitled to inspect the books of a corporation.[5] The right of inspection was limited to certain records, and courts did not approve of a general request to inspect all records.[6] Statutes were later adopted to include and enlarge upon the common law inspection rights.[7] The right of inspection was personal to the stockholder, and was exercised by that person or an agent acting for the stockholder.[8] At common law when a pledgee acquired the stock and be-

came a stockholder the pledgee/stockholder's request to inspect the books to determine the value of the stock for the purpose of sale was then deemed to be a proper purpose for inspection.[9] But U.S. Trust does not seek inspection as a stockholder, merely as a pledgee.

U.S. Trust cites to an encyclopedia for the proposition that a pledgee has a common law inspection right to the corporate records. That encyclopedia, in addition to noting the authority to the contrary, relies upon two opinions. *In re Citizens' Savings & Trust Co.*, 156 Wis. 277, 145 N.W. 646 (1914); *Newcomer v. Miller*, 166 Md. 675, 172 A. 242 (1934). Neither of these opinions supports a rule as urged by U.S. Trust.[10]

The authority to the contrary, *In re Brooklyn First Nat. Bank*, 28 Misc. 662, 59 N.Y.S. 1042, affirmed, 44 A.D. 635, 60 N.Y.S. 1138 (1899), declined to recognize an inspection right in a pledgee. *Brooklyn First Nat. Bank* is a case where a bank, as pledgee, applied to a corporation to be allowed to

5. *Lewis v. Brainerd*, 53 Vt. 519, 521–522 (1881); *Stone v. Kellogg*, 165 Ill. 192, 46 N.E. 222 (1896); *Otis–Hidden Co. v. Scheirich*, 187 Ky. 423, 219 S.W. 191, 194 (1920); *Bank of Heflin v. Miles*, 294 Ala. 462, 318 So.2d 697, 700 (1975).

6. *Rex v. Tailors' Company*, [1831] 2 Barn. & Adol. 115, 109 E.R. 1086; *Rex v. Babb*, [1790] 3 T.R. 579, 100 E.R. 743; *Mutter v. Eastern and Midlands Railway*, [1888] 38 Ch.D. 92, 106; *In re Steinway*, 159 N.Y. 250, 53 N.E. 1103, 1106 (1899).

7. *Doggett v. North American Life Ins. Co.*, 396 Ill. 354, 71 N.E.2d 686, 688 (1947); (explained common law limitations of time, place, and purpose of inspection); *State ex rel. McClure v. Malleable Iron Range Co.*, 177 Wis. 582, 187 N.W. 646, 647 (1922), (statutes allowing inspection of corporate records enlarged the common law right and stockholder inspections are statutorily authorized in more circumstances); *Foster v. White*, 86 Ala. 467, 6 So. 88 (1889), (same); *Pfirman v. Success Mining Company*, 30 Idaho 468, 166 P. 216, 218 (1917), (statutes were designed to adopt and extend the common law rule); *In re Steinway*, 159 N.Y. 250, 53 N.E. 1103, 1106–1107 (1899), (same).

8. At the beginning of this century one author explained the stockholder's inspection rights of corporate books under the common law and the then recently enacted statutes. William Clark, *Handbook on the Law of Private Corporations*, 325–328 (F. Tiffany 2d ed. 1907). The author explained that the person demanding access to

the records must be the stockholder, or an agent acting for the stockholder. at 325, 327–328, citing, *State ex rel. Bulkey v. Whited & Wheless*, 104 La. 125, 28 So. 922 (1900), (non-stockholder could not claim right to inspect books); *Foster v. White*, 86 Ala. 467, 6 So. 88 (1889), (right of inspection is personal in the sense that only stockholder may exercise the right); *Cincinnati Volksblatt Co. v. Hoffmeister*, 62 Ohio St. 189, 56 N.E. 1033 (the right is personal to the stockholder and stockholder's agent may inspect books); *State ex rel. Burke v. Citizens Bank*, 51 La.Ann. 426, 25 So. 318 (1899), (executrix protecting interests of deceased stockholder may inspect books). *See also State ex rel. O'Hara v. National Biscuit Co.*, 69 N.J.Law 198, 54 A. 241, 242 (1903), (right given to stockholders); *In re Steinway*, 159 N.Y. 250, 53 N.E. 1103 (1899), (same).

9. *State ex rel. Brumley v. Jessup & Moore Paper Co.*, 1 Boyce (Del.) 379, 77 A. 16 (1910).

10. The Wisconsin one-paragraph opinion, *In re Citizens' Savings & Trust Co.*, 156 Wis. 277, 145 N.W. 646 (1914), states that a bank holding shares endorsed to the bank could inspect the corporate books in the custody of the banking commissioner liquidating the corporation. The Wisconsin court later explained its holding in *Citizens'* by stating it held therein that a stockholder is entitled to examine the books of a corporation. *State ex rel. McClure v. Malleable Iron Range Co.*, 177 Wis. 582, 187 N.W. 646, 647 (1922). In *Newcomer v. Miller*, 166 Md. 675, 172 A. 242 (1934) the pledgee bought all of the stock

examine its books to ascertain the value of the pledged stock. When the corporation refused the bank sought mandamus to compel the production. In denying the writ the court explained that the pledgee/bank was not a stockholder, and not subject to the benefits or responsibilities of a stockholder. *Id.* 59 N.Y.S. at 1043. the court then said: "It is true that the pledging of the stock conferred upon the bank, as pledgee, certain legal and equitable rights, but the one invoked is not among them." *Id.* U.S. Trust has no common law right, as pledgee, to inspect and audit RAMCO's books and records for the purpose of an independent valuation of the stock.

U.S. Trust also relies upon 12 O.S.1991 § 848 and related statutory authority for proceedings in aid of execution. Property of a judgment debtor is subject to the payment of a judgment. 12 O.S.1991 § 841. A judgment debtor may be compelled to answer concerning the debtor's property, and upon the discovery of property of the debtor "such proceedings as provided by law may be had for the application of such property toward the satisfaction of said judgment." 12 O.S. 1991 § 842. Witnesses may be called to testify concerning the property of the debtor. 12 O.S.1991 § 848.

The ultimate purpose of these procedures is to effect the application of a judgment debtor's property to a judgment. 12 O.S. 1991 §§ 841, et seq. Whether a witness possesses property of the debtor or owes property to the debtor are relevant inquiries pursuant to § 850. *Stone v. Coleman,* 557 P.2d 904 (Okla.1976). We have observed that § 848 is a trial procedure and not for the purpose of discovery. *Stone v. Coleman,* 557 P.2d at 905.

■ In a § 850 proceeding U.S. Trust may compel a witness to produce relevant and admissible evidence **as measured by its claim against Yaw.** *Stone v. Coleman,* 557 P.2d at 906. RAMCO, as witness, provided an audited financial report. No claim has been made that this report does not give a value on the stock as determined by RAM-CO. U.S. Trust cannot require that it be provided sufficient corporate records to perform its own audit of the corporation and determine for itself what the value of the stock is. U.S. Trust can require RAMCO to say what the value of the stock is according to the corporate books or records of RAM-CO.

The trial court, by its order of November 15, 1994, required of RAMCO the production of: 1. any and all shareholder or board resolutions of the companies; 2. any and all board or shareholder consent actions for the companies; 3. any and all minutes of board or shareholder meetings of the companies; 4. copies of any reserve studies relating to the property owned or leased by the companies; and 5. information regarding accounts payable and accounts receivable for the companies. The order included all subsidiaries and affiliates. It exceeds the relevant inquiry a creditor may make of a non-party's records in a § 850 proceeding, and thus, prohibition may properly issue. *Jones Packing Company v. Caldwell,* 510 P.2d 683 (Okla.1973); *Stone v. Coleman,* 557 P.2d 904 (Okla.1976).

On the eve of this opinion's adoption the parties advise that the stock has now been sold by U.S. Trust, and they jointly move that the action be dismissed as moot. We note that the joint motion to dismiss asks for remand with directions that the trial court vacate its order, which would be consistent with the result reached by us. We decline to dismiss, believing our opinion may provide guidance should the problem arise in the future. Let the writ issue prohibiting the respondent, or any other assigned judge in the cause, from enforcement of the order of November 15, 1994.

WILSON, C.J., and HODGES, LAVENDER, HARGRAVE, SUMMERS and WATT, JJ., concur.

KAUGER, V.C.J., and SIMMS and OPALA, JJ., dissent.

OPALA, Justice, dissenting.

The court assumes today its original jurisdiction to prohibit the respondent-judge from

---

at a sale upon foreclosure and then sought to inspect the corporate books in the custody of the court and held by a receiver. The court explained that the pledgees became owners of all of the stock and could inspect the books. *Id.* 172 A. at 243. The Maryland court did not recognize an inspection right based upon pledgee status.

enforcing his November 15, 1993 order, entered in Cause No. CJ-93-4842, District Court, Tulsa County, State of Oklahoma.[1] The record entry here in issue orders Ramco Operating Company f/k/a Ramco Holding Corp. [Ramco] to produce data deemed indispensable in the United States Trust Company of New York's [Trust] *post-judgment* quest to value Robert E. Yaw, II's [Yaw] stock in Ramco, *a privately held corporation.* The nisi prius judge, respondent here, considered these data *necessary to* the certificated securities' *valuation* in the context of a *pre-execution sale* of Yaw's Ramco shares to Dynamic Energy Sources, Inc. [Dynamic]. Trust's rights in Yaw's shares rest *both* on a judgment creditor's possessory lien[2] and on its perfected security interest in the stock[3]. Were I to accede to the court's reasoning in prohibiting the November 15 order's enforcement, I would *effectively* deny Trust its right to conduct a *legally safe* (exposure-proof) pre-execution (private) sale[4] and to use the proceeds to satisfy its judgment against Yaw. Today's pronouncement, which I cannot countenance, means that Trust *has no independent right* to determine the value of Ramco's stock but must instead look *solely* to Ramco's representation of its stock's worth.[5]

# I

## THE ANATOMY OF LITIGATION

On August 10, 1989 Yaw executed a pledge agreement giving Trust a security interest in his Ramco stock and placed his shares in Trust's possession. After Yaw's default Trust secured a *money judgment* against him in a New York Supreme Court and then domesticated it in Tulsa County on October 29, 1993 under the provisions of 12 O.S.1991 § 721.[6] On October 3, 1994 Trust agreed to sell Yaw's Ramco stock to Dynamic. Both a judgment creditor of Yaw and the holder of a security interest in his Ramco stock, Trust is in the process of selling the Yaw shares *without the aid of the court's execution process.*[7] It is authorized so to do by the pledge agreement with Yaw.

To facilitate this transaction Trust undertook to acquire data from Ramco to aid itself and Dynamic [the prospective purchaser] in assessing the value of Yaw's Ramco stock. Trust secured a subpoena *duces tecum* (from the Tulsa County District Court) calling upon Ramco to produce thirteen categories of data. Ramco initially produced *all but six* of the items sought.

In conjunction with the subpoena for the production of Ramco's audited financial statements, a "protective order" was entered

1. The November 15 order requires Ramco to produce: (1) all shareholder or board resolutions of Ramco and its subsidiaries [Companies]; (2) all board or shareholder consent actions for the Companies; (3) all minutes of board or shareholder meetings of the Companies; (4) copies of any reserve studies relating to the property owned or leased by the Companies; and (5) information regarding the accounts payable and accounts receivable of the Companies. For a general discussion of how the respondent judge formulated the categories of data ordered produced, see *infra* note 22.

2. On October 15, 1993 Trust secured judgment against Yaw in the amount of $3,203,400.67 in United States Trust Company of New York v. Robert E. Yaw, Index No. 6462/92, Supreme Court of New York. This judgment was domesticated in Tulsa County on October 29, 1993 by compliance with the provisions of 12 O.S.1991 § 721 [*see infra* note 6].

3. Yaw executed a *pledge agreement* dated August 10, 1989 by which he granted Trust a security interest in his Ramco stock. It is undisputed that Trust has *possession* of Yaw's Ramco stock certificates. Yaw's pledge provides that if his Ramco shares are sold, the sale proceeds should be applied toward satisfying his obligation. In

selling Yaw's stock Trust is neither an *interloper* nor an *officious volunteer. See* N.Y. [U.C.C.] §§ 9-203, 9-304, 9-305 (1994).

4. Our jurisprudence recognizes a pledgee's right to sell pledged property *at a private sale. Ardmore State Bank v. Mason*, 30 Okl. 568, 120 P. 1080, 1084 (1911); *Dunbar v. Commercial Electrical Supply Co.*, 32 Okl. 634, 123 P. 417, 418 (1912).

5. *See* my analysis, *infra* note 18.

6. The pertinent terms of 12 O.S.1991 § 721 are: "A copy of any foreign judgment authenticated in accordance with the applicable Act of Congress or of the statutes of this state may be filed in the office of the court clerk of any county of this state.... A judgment so filed has the same effect ... as a judgment of a district court of this state and may be *enforced or satisfied* in like manner...." [Emphasis added.]

7. The pertinent provisions of 12 O.S.1991 § 731 provide: "Executions shall be deemed process of the court, and shall be issued by the clerk, and directed to the sheriff of the county...."

on October 25, 1994.[8] On October 31, 1994 Dynamic gave Ramco a requested confidentiality agreement. Ramco then produced the requested financial statements that Trust sought.

On November 15, 1994 the court *ordered Ramco to produce five more items of data.*[9] It was in response to the latter order that Ramco invoked this court's original cognizance to prohibit the order's enforcement.

## II

### TRUST, *QUA* JUDGMENT CREDITOR OF YAW, IS ENTITLED TO THE COURT'S AID IN ITS EFFORTS TO PROTECT THE RAMCO STOCK SALE AGAINST COMPLAINTS THAT IT WAS NOT AT A FAIR PRICE

Since Trust's New York money judgment[10] has been domesticated[11] in Tulsa County, it is *enforceable*[12] in Oklahoma. It confers on Trust the status, rights and remedies afforded by our law to any judgment creditor. Trust may avail itself *not only* of the court's legal execution process *but also* of its equitable powers to aid in collecting its judgment.[13]

To assist the judgment creditor in discovering and identifying the judgment debtor's assets, the legal system has long provided certain equitable redress.[14] The remedies, available in *"supplementary proceedings,"*[15] are now partially codified in 12 O.S.1991 § 848.[16] They are clearly invocable to assist with discovery that would protect a creditor against future complaints that the sale was not at a fair price.

---

**8.** The court's order requires that Ramco's audited financial statements, furnished to Trust and Dynamic, be kept confidential. [Ramco claims that Dynamic was one of its competitors.]

**9.** *See supra* note 1 for the November 15, 1993 nisi prius order's terms.

**10.** *See supra* note 2 for the money judgment's terms.

**11.** By the terms of the Uniform Foreign Money–Judgment Recognition Act, 12 O.S.1991 §§ 710 *et seq.*, Trust's money judgment against Yaw acquired domestic recognition and became entitled to local execution relief.

**12.** Trust's judgment is enforceable under the Uniform Enforcement of Foreign Judgments Acts, 12 O.S.1991 §§ 719 *et seq.*

**13.** In 1988 the legislature *effectively abolished* the common-law requirement—that one must exhaust legal remedies before resorting to equity—when it amended 12 O.S.1991 § 735 [effective November 1, 1988]. The amendment provides that, in addition to execution, issuance of a garnishment summons—an equitable remedy—will extend the period during which a judgment remains enforceable (and is kept from falling into dormancy).

**14.** The law has long recognized *"supplementary proceedings"—i.e.,* proceedings subsequent to judgment or execution—to aid judgment creditors in identifying and applying debtors' assets to the judgments' satisfaction. *See* H. OLECK, DEBTOR-CREDITOR LAW § 17 at 66 (1962); J.W. SMITH, THE EQUITABLE REMEDIES OF CREDITORS §§ 200 *et seq.* (1899); A.C. FREEMAN, A TREATISE ON THE LAW OF JUDGMENTS § 848 at 1795–98 (1925); *see also* Honce v. Schram, 73 Kan. 868, 85 P. 535, 537 (1906); *Herrlich v. Kaufmann*, 99 Cal. 271, 33 P. 857, 858 (Cal.1893). *Proceedings of this nature are characterized as supplemental to the action in which the judgment was rendered. See* J.W. SMITH, *supra* § 4 at 11.

**15.** *Supplementary proceedings*—while in the nature of a creditor's bill—*are in lieu of them* and are matters of equitable cognizance. Historically they were used in aid of execution to reach beyond the limits of common-law process and compel that "which ought to have been done." J.W. SMITH, THE EQUITABLE REMEDIES OF CREDITORS, *supra* note 14, § 4 at 11. The propriety of affording equitable relief lies within the discretion of the nisi prius court. *Mid-America Corporation v. Geismar*, Okl., 380 P.2d 85, 88 (1963). For a general discussion of creditors' bills and their use in discovering and identifying assets of the judgment debtor, see G. BISPHAM, THE PRINCIPLES OF EQUITY: A TREATISE ON THE SYSTEM OF JUSTICE ADMINISTERED IN COURTS OF CHANCERY § 525 at 805 (J. McCoy, 10th ed. 1922).

**16.** The pertinent terms of 12 O.S.1991 § 848 are:

"Witnesses may be required, upon the order of the judge, to appear and testify upon any proceedings herein provided in the same manner as upon the trial of an issue."

## III

### OUR LAW WILL NOT EXTEND TO *TRUST* A RIGHT TO SELL *YAW'S* RAMCO STOCK AND ALSO DENY *IT* A LEGALLY SAFE WAY TO VALUE THE SHARES OFFERED FOR SALE

Trust's actions, questioned in today's proceedings, essentially consist of efforts to satisfy its judgment by securing appraisement of stock antecedent to a sale of the judgment debtor's assets in its possession. By a subpoena *duces tecum* Trust is *not* seeking to secure a *shareholder's broad right to inspect*[17] the corporation's *books* and *records*. Rather, Trust presses for the *disclosure* of data which, *under generally accepted accounting procedures*, are relevant in determining the fair market value of Ramco's *privately held stock* for which there *is no established market value*. It is *within the nisi prius court's equitable cognizance to grant the relief sought* for the creditor's protection against possible future complaints that the sale was not fair.[18]

## IV

### TRUST IS ALSO ENTITLED TO THE DATA IN RAMCO'S POSSESSION BECAUSE THEY ARE NECESSARY TO VALUE ITS RAMCO STOCK BY GENERALLY ACCEPTED ACCOUNTING PROCEDURES

*Qua* judgment creditor, Trust *also is entitled* to secure the data items *essential* for pre-sale appraisement of Yaw's Ramco shares. Trust seeks no more information than the very minimum it must have under generally accepted accounting standards. Its efforts bear no analogy to a shareholder's statutory or common-law quest for inspection, *i.e., assertion of a right to know the full sweep of corporate activity*. Trust's quest for disclosure is appropriately most narrowly focused.[19]

## V

### TRUST'S QUEST IS LIMITED TO DISCLOSURE OF DATA NECESSARY TO EFFECTUATE A LEGALLY SAFE SALE OF YAW'S RAMCO STOCK AND DOES NOT AMOUNT TO *GENERAL DISCOVERY* OF RAMCO'S BUSINESS RECORDS

The *supplementary remedy* that is available to a judgment creditor is ancillary to the original action in which the judgment was rendered.[20] This principle accords with our extant jurisprudence[21] and with its consistent teaching that § 848 is a *trial procedure* and does not amount to an impermissible general discovery by the judgment creditor. The respondent judge's November 15 order does not give Trust a license to engage in a hunting expedition. It stands *limited* to specific items of information which, as the court has determined [after taking evidence[22]], are

---

**17.** With the enactment of Business Incorporation Act in 1947, a *shareholder* became entitled to inspect corporate records *"for any proper purpose."* *Wolozyn v. Begarek*, Okl., 378 P.2d 1007, 1010 (1963). Before the Act's passage shareholders had *an unfettered statutory* right to inspect corporate books and records *irrespective of their motivation. Hoover v. Fox Rig & Lumber Co.*, Okl., 189 P.2d 929, 932–33 (1948).

**18.** *Equity* imposes upon one selling *pledged collateral* the affirmative duty to obtain a fair and reasonable price. *See Whitman v. Boston Terminal Refrigerating Co.*, 233 Mass. 386, 124 N.E. 43, 44 (1919); *Dibert v. D'Arcy*, 248 Mo. 617, 154 S.W. 1116, 1124 (1913); *German–American State Bank v. Spokane C.R.R. & Nav. Co.*, 49 Wash. 359, 95 P. 261, 262 (1908). The sale of collateral in which one possesses a perfected security interest in the Article 9 sense of the Commercial Code must be "commercially reasonable". 12A O.S. 1991 § 9–504(3). For a description of disputes that may arise upon a complaint that the sale was not commercially reasonable, see the exhaustive opinion in *Ruden v. Citizens Bank & Trust*, 638 A.2d 1225 (Md.Ct.Spec.App.1994).

**19.** *See supra* note 17 for the history of a shareholder's right to inspect.

**20.** *See supra* note 14, J.W. SMITH, THE EQUITABLE REMEDIES OF CREDITORS § 4 at 10.

**21.** *Stone v. Coleman*, Okl., 557 P.2d 904, 905 (1976).

**22.** Our paperwork reveals that the respondent judge heard testimony of what was required, *under generally accepted accounting principles,* to value the stock of a privately held corporation. *See* Exhibit "B" to Ramco's abstract of record in

relevant to the valuation process of a debtor's asset sought to be offered at a private sale, with the proceeds to be applied toward the judgment's satisfaction.

## VI

### TODAY'S OPINION RESOLVES MOOTED ISSUES UNDER THE *LIKELIHOOD–OF–RECURRENCE* EXCEPTION TO THE MOOTNESS DOCTRINE

By their February 6, 1995 joint motion before this court Ramco and Trust seek this cause's dismissal because the proceeding has been mooted by Trust's completed sale of Yaw's Ramco stock. Inasmuch as the important legal issue in dispute here is likely to recur, the court nonetheless proceeds to decide this no longer lively contest under an exception to the mootness doctrine.[23] I concur in today's effort to expand the body of extant jurisprudence.

## VII

### SUMMARY

Today's writ denies a judgment creditor the opportunity to conduct a legally safe sale of a debtor's stock in a privately held corporation. The court's pronouncement is made *sans* opportunity to examine all of *the comprehensive record* of evidence presented to the respondent judge.

The respondent judge's November 15 order, entered in a § 848 *supplementary proceeding*, should be left undisturbed. It compels disclosure of data *absolutely necessary* to appraise—in a legally safe manner—Ramco's stock by application of generally accepted accounting principles.[24]

support of its application. It is obvious that *merely a trickle of the entire testimony* was incorporated into the materials tendered for our review in this original action.

23. Our jurisprudence recognizes two "escape hatches" from the strictures of the *mootness doctrine*. These are (1) the *public-interest* and (2) the *likelihood-of-recurrence* exceptions. *City of Oklahoma City v. Oklahoma Tax Com'n*, Okl., 789 P.2d 1287, 1297 (1990) (Opala, J., dissenting); *Westinghouse Elec. v. Grand River Dam Auth.*, Okl., 720 P.2d 713, 720 (1986); *Peppers Refining*

I would subject Trust neither to the hazard of a debtor's tort claim nor to a post-judgment dispute over the amount of credit rightly due the debtor as the sale's proceeds. Because Trust is deprived today of a valuable protection against possible complaints that its sale was not at a fair price,[25] I recede from today's writ as well as from the court's pronouncement.

*Co. v. Corporation Commission*, 198 Okl. 451, 179 P.2d 899, 901 (1947).

24. The law's general principles of fairness are applicable to all post-judgment judicial sales. The safeguards that govern *judicial* sales *can be no less protective* of the debtor *than those imposed on contractually authorized private sales. Cate v. Archon Oil Co., Inc.*, Okl., 695 P.2d 1352, 1355 (1985). *See also* 12A O.S.1991 § 9–504(3).

25. *See Ruden, supra* note 18 at 1225.