2015 OK CIV APP 66

**Gregory M. EGLESTON, Plaintiff/Appellant,**

v.

**CHESAPEAKE ENERGY CORPORATION, Defendant/Appellee.**

**No. 112,925.**

Court of Civil Appeals of Oklahoma, Division No. 4.

June 30, 2015.

See also 318 P.3d 210.

Mark A. Waller, J. David Jorgenson, Sneed Lang PC, Tulsa, Oklahoma, for Plaintiff/Appellant.

Spencer F. Smith, McAfee & Taft, A Professional Corporation, Oklahoma City, Oklahoma, and Robert P. Varian, Pro Hac Vice, M. Todd Scott, Pro Hac Vice, Alex K. Talarides, Pro Hac Vice, Orrick, Herrington & Sutcliffe LLP, San Francisco, California, for Defendant/Appellee.

DEBORAH B. BARNES, Judge.

¶ 1 Plaintiff/Appellant Gregory M. Egleston (Egleston) appeals the trial court's Order granting the motion to dismiss of Defendant/Appellee Chesapeake Energy Corporation (Chesapeake).[1] Egleston previously made a demand on Chesapeake that it take certain actions related to alleged corporate waste and mismanagement. On appeal in that prior case, a separate division of this Court concluded that Chesapeake's action constituted a rejection of Egleston's demand, and that the rejection was a reasonable exercise of business judgment. We now determine that, based on that prior determination, which became final, Egleston may not pursue an action under 18 O.S.2011 § 1065 to compel in-

---

1. Matters outside the petition were presented to (and not excluded by) the trial court. "If, on a motion ... to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment...." 12 O.S.2011 § 2012(B). In addition, the Oklahoma Supreme Court ordered that this appeal "shall proceed as a summary disposition case pursuant to Rule 1.36 of the Oklahoma Supreme Court Rules."

spection of corporate records to further investigate events related to his prior demand. Therefore, we affirm the Order.

## BACKGROUND

¶2 In September, 2013, Egleston filed a petition to compel an inspection of certain books and records of Chesapeake.[2] Egleston, a shareholder of Chesapeake, seeks

> two distinct sets of materials: (1) the Audit Committee Report ... that served as the basis for the Company's Board of Directors ... exonerating Mr. Aubrey McClendon ..., the Company's former Chief Executive Officer ... and Chairman; and (2) materials related to the Board's determination that Mr. McClendon was entitled to excessive and unusual severance terms and benefits despite Mr. McClendon's repeated, self-interested conduct that caused the Company extensive harm and resulted in his removal from the Company.

¶3 Egleston alleges that during McClendon's tenure as CEO,

> Mr. McClendon engaged in self-dealing practices on multiple occasions that caused material harm to the Company. Despite ample evidence of this malfeasance, the Company's Audit Committee ... submitted a report (the "Audit Committee Report") to the Company's Board of Directors finding no intentional misconduct on Mr. McClendon's part. Relying on this report, the Board of Directors exonerated Mr. McClendon of all wrongdoing. Later, Mr. McClendon would receive a lucrative severance package upon his resignation and then subsequently, receive altered favorable terms that would allow him continued use of Company assets and the ability to engage in direct competition with Chesapeake.

¶4 Egleston also alleges that during McClendon's tenure as CEO, Chesapeake engaged in "pervasive, illegal conduct," and that

> Mr. McClendon was primarily responsible for overseeing the Company and making certain that the proper internal controls were available and functioning to prevent

any illicit conduct. Mr. McClendon either knowingly or recklessly disregarded such responsibilities and as a result, the Company has suffered and will suffer harm. Despite disregarding his oversight responsibilities, the Board has still provided Mr. McClendon with lucrative and favorable severance terms.

¶5 Egleston further alleges that "McClendon's malfeasance" caused "weakness and instability," including sharp drops in market capitalization and the "need for Chesapeake to desperately secure financing on the most unfavorable of terms and sell assets below market value...."

¶6 In August, 2012, a little over a year prior to filing the petition in this case, Egleston sent what he describes as "well-pleaded factual allegations" to Chesapeake requesting, among other things, that its Board of Directors

> assert corporate governance and legal action against Mr. McClendon and the directors that permitted his malfeasance. Specifically, the Egleston Demand requested legal action against Mr. McClendon for abdicating his fiduciary duties and causing the Company substantial harm by concurrently negotiating with financial lenders on his behalf and on behalf of the Company, while securing favorable terms for himself to Chesapeake's detriment.

Egleston asserts he also "requested that Mr. McClendon be terminated from his position as CEO, removed from the Chesapeake Board of Directors[,] and [Egleston] sought the claw back of any salary, compensation or bonuses accumulated between November 2011 and the present."

¶7 The Chesapeake Board of Directors denied Egleston's demand, and Egleston filed a petition in November, 2012, alleging that the Board's denial did not satisfy the business judgment rule. The prior case culminated in the issuance of an opinion by a separate division of this Court: *Egleston ex rel. Chesapeake Energy Corp. v. McClendon*, 2014 OK CIV APP 11, 318 P.3d 210. In that opinion, the Court confirmed that, prior to

---

**2.** Egleston's petition is entitled "Verified Complaint Pursuant to 18 O.S. § 1065 to Compel

Inspection of Books and Records."

filing the November 2012 petition, Egleston made a demand on the Chesapeake Board of Directors that it "take immediate legal action against McClendon and former members of the Board of Directors to recover damages for breach of fiduciary duty, to enforce the rules of corporate governance, and to remove McClendon as CEO," *id.* ¶ 3, and that this demand was denied by the Board.[3] Egleston filed the November 2012 petition alleging, as stated, that the Board's denial did not satisfy the business judgment rule. The trial court dismissed the November 2012 petition with prejudice. On appeal, in affirming the trial court's dismissal, the Court found the denial of Egleston's demand by the Board constituted a reasonable exercise of business judgment. *Id.* ¶ 18.[4]

¶ 8 Following the filing of the petition in the present case to compel an inspection of certain books and records of Chesapeake, Chesapeake filed a motion to dismiss, Egleston filed a response, and Chesapeake filed a reply. Both parties attached evidentiary materials to their filings which were not excluded by the trial court. From the trial court's Order filed in May, 2014, granting Chesapeake's motion, Egleston appeals.

## STANDARD OF REVIEW

■ ¶ 9 Although Chesapeake titled its motion a "Motion to Dismiss," it attached matters outside the pleading that were not excluded by the trial court; consequently, we will treat the motion as one for summary

3. We note there was some dispute in the prior action as to whether the Board's response to Egleston's demand constituted a denial. On appeal, the Court concluded the Board's action "constituted a denial of Plaintiff's demand." *Id.* ¶ 18 (citation omitted).

4. In particular, the prior appeal arose from the trial court's order granting defendants' motion to dismiss. The trial court dismissed the prior petition "with prejudice." On appeal, the Court affirmed, stating:

In the present case, the Petition and Board's response to Plaintiff's demand demonstrate that Board appreciated the substance of Plaintiff's complaints. The Petition and Board's response also demonstrate that Board was sufficiently informed to conclude the substance of Plaintiff's complaints were the subject of its own investigation, other shareholder derivative suits, and investigations by the Department of Justice, the Securities and Exchange Commission, and the Michigan Attorney General. The

judgment.[5] An order that grants summary relief disposes solely of legal questions and is reviewable by a *de novo* standard. *Residential Funding Real Estate Holdings, LLC v. Adams,* 2012 OK 49, ¶ 17, 279 P.3d 788.[6]

## ANALYSIS

¶ 10 Chesapeake argues that Egleston "cannot use a Section 1065 action to obtain documents related to allegations in a lawsuit that has been dismissed with prejudice." Chesapeake argues:

Having already received three voluminous productions of Chesapeake's confidential materials and filing a failed lawsuit on that basis, [Egleston] insists he is entitled to yet more documents related to that suit. But as a matter of law, [Egleston] cannot use the inspection rights afforded by Section 1065 to gather discovery that bears directly on a dismissed case[.]

¶ 11 The Oklahoma Supreme Court has stated:

Our statutes clearly recognize that a "shareholder of record" may seek certain corporate records. 18 O.S.1991 § 1065(A). . . . If access is denied after the statutory procedure for access has been followed a shareholder of record may apply to the District Court for an order to compel inspection.

record does not demonstrate that Board acted otherwise than adequately informed of the substance of Plaintiff's complaints.

*Id.* ¶ 13. The Court concluded that the "Board's decision to defer action on Plaintiff's derivative petition constituted a denial of Plaintiff's demand," and that this denial "constituted a reasonable exercise of business judgment." *Id.* ¶ 18 (citation omitted). Following issuance of the opinion, neither party petitioned for certiorari, and mandate issued in February, 2014.

5. *See* n.1, *supra.*

6. That is, "[a]lthough a trial court in making a decision on whether summary judgment is appropriate considers factual matters, the ultimate decision turns on purely legal determinations, i.e. whether one party is entitled to judgment as a matter of law because there are no material disputed factual questions." *Carmichael v. Beller,* 1996 OK 48, ¶ 2, 914 P.2d 1051.

*Ramco Operating Co. v. Gassett*, 1995 OK 8, ¶ 7, 890 P.2d 941. Title 18 O.S.2011 § 1065 provides, in part, as follows:

C. 1. If the corporation or an officer or agent thereof refuses to permit an inspection sought by a shareholder ... the shareholder may apply to the district court for an order to compel an inspection....

2. Where the shareholder seeks to inspect the corporation's books and records, other than its stock ledger or list of shareholders, the shareholder shall first establish that:

a. the shareholder is a shareholder,

b. the shareholder has complied with the provisions of this section respecting the form and manner of making demand for inspection of the documents, and

c. the inspection the shareholder seeks is for a proper purpose.[7]

¶ 12 There is no dispute that Chesapeake has refused to permit access to certain records sought by Egleston. Moreover, this appears to be Egleston's first § 1065 action; consequently, he is not barred by a prior application made to the district court to compel inspection under the same circumstances. *See, e.g., Sec. First Corp. v. U.S. Die Casting & Dev. Co.*, 687 A.2d 563, 570–71 (Del.1997) ("Neither the doctrine of *res judicata* nor the principle of the law of the case has any application to a subsequent demand ... to inspect" so long as "there has been a material change of circumstances" from the time of a previous demand to inspect.).[8] Furthermore, the Delaware Supreme Court has rejected as "overbroad," and "unsupported by the text of, and the policy underlying, Section 220" (the counterpart of which, in Oklahoma, is § 1065), a rule that "would automatically bar a stockholder-plaintiff from

bringing a Section 220 action *solely* because that plaintiff previously filed a plenary derivative suit[.]" *King v. VeriFone Holdings, Inc.*, 12 A.3d 1140, 1151 (Del.2011).[9]

¶ 13 Even with this in mind, however, the nature of the prior action was not a "plenary derivative suit" but, rather, a demand, by Egleston, that Chesapeake's Board take certain actions with regard to alleged mismanagement and waste. Moreover, the Board's decision to deny Egleston's demand was specifically found in the prior appeal to "constitute[ ] a reasonable exercise of business judgment," *McClendon*, ¶ 18, and this decision became final. Egleston now seeks to pursue a § 1065 action to investigate the same corporate mismanagement about which he complained in the prior demand action—a demand which Chesapeake properly denied as concluded in the prior case.

¶ 14 Egleston argues that, in this case, he is seeking to investigate certain further acts of corporate wrongdoing about which he did not complain in the prior action. Egleston admits "the background information [in the present action], specifically Mr. McClendon's malfeasance, contains much of the same facts [as in the prior action]...." However, he argues that, in this action, he is now also complaining about (1) the "exoneration" of McClendon by the Board based on a certain Audit Committee Report, and (2) the severance package provided to McClendon. Based on Egleston's own allegations, however, both of these acts occurred during the proceedings before the trial court in the prior action. The "exoneration" was announced in February of 2013, well in advance of the April 2013 hearing.[10] Egleston also admits that the announcement of the severance package occurred on April 19, 2013, after the

---

7. *See generally* Jonathan D. Horton, *Oklahoma Shareholder and Director Inspection Rights: Useful Discovery Tools?*, 56 Okla. L.Rev. 105 (2003).

8. "Oklahoma law in this area is not well-developed. This being so, and our law patterned on that of the state of Delaware, we may look to the decisions of the Delaware courts for instruction." *McClendon*, 2014 OK CIV APP 11, ¶ 10, 318 P.3d 210.

9. We note, however, that as observed by the court in *South v. Baker*, 62 A.3d 1, 20 (Del.Ch.

2012), the Delaware Supreme Court in *King* did suggest "three non-preclusive remedies" for the lower court to consider.

10. McClendon's "exoneration" was announced on February 20, 2013, and the hearing before the trial court in the prior case occurred on April 5, 2013. Egleston also admits that "the announcement of the McClendon exoneration was proffered as evidence" at the April 5, 2013 hearing, but for a different purpose.

hearing but prior to the date the trial court's order was filed—May 2, 2013.

¶ 15 While the announcement of the severance package occurred after the hearing in the prior action (but before the date the trial court's order was filed), Egleston admits that in his demand in the prior action, he "sought the claw back of any [of McClendon's] salary, compensation or bonuses accumulated between November 2011 and the present." Thus, it is clear that the general issue regarding the appropriate compensation and benefits to be awarded to McClendon, given McClendon's alleged malfeasance, was placed squarely before the Board in the prior demand.

¶ 16 Finally, because the underlying, or "background" facts, are the same in both actions—i.e., the extensive allegations regarding wrongdoing, mismanagement, and waste by McClendon—any impropriety by the Board as alleged in this action rests on the same acts (the malfeasance of McClendon) alleged in the prior action.

■ ¶ 17 Oklahoma has adopted a statute—12 O.S.2011 § 2023.1 [11]—"modeled after" Delaware Chancery Rule 23.1, and "[i]t is a settled rule that when one state adopts a statute from another, it is presumed to adopt the construction placed upon the statute by the highest court of the other state." *Kurtz v. Clark*, 2012 OK CIV APP 103, ¶ 19, 290 P.3d 779 (citations omitted). The Delaware Supreme Court stated:

A stockholder filing a derivative suit must allege either that the board rejected his pre-suit demand that the board assert the corporation's claim[,] or allege with

particularity why the stockholder was justified in not having made the effort to obtain board action [i.e., demand futility]. This is a "basic principle of corporate governance" and is a matter of substantive law embodied in the procedural requirements of Chancery Rule 23.1.

*Grimes v. Donald*, 673 A.2d 1207, 1216 (Del. 1996) (overruled on other grounds by *Brehm v. Eisner*, 746 A.2d 244 (Del.2000)). Regarding situations, such as the one in the present action, in which a board has rejected a demand to assert a claim, the United States Supreme Court, citing Delaware law, has stated that "the demand requirement implements the basic principle of corporate governance that the decisions of a corporation—including the decision to initiate litigation—should be made by the board of directors or the majority of shareholders," and a board's decision to reject a demand "is subject only to the deferential business judgment rule standard of review[.]" *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 101, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991) (internal quotation marks omitted) (citations omitted).

■ ¶ 18 In addition, the Oklahoma Supreme Court has noted that § 2023.1 "is identical" to Rule 23.1 of the Federal Rules of Civil Procedure. *A–Plus Janitorial & Carpet Cleaning v. Employers' Workers' Comp. Ass'n*, 1997 OK 37, ¶ 12 n. 18, 936 P.2d 916.[12] The requirement codified in Rule 23.1 that a plaintiff make demand upon the corporation's directors "is not merely a technical pleading hurdle; it is based on a fundamental tenet of American corporate law that places the responsibility for making decisions

---

**11.** Section 2023.1 provides:

In a derivative action brought by one or more shareholders or members to enforce a right of a corporation or of an unincorporated association, the corporation or association having failed to enforce a right which may properly be asserted by it, the petition shall be verified and shall allege that the plaintiff was a shareholder or member at the time of the transaction of which he complains or that his share or membership thereafter devolved on him by operation of law. The petition shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for his failure to

obtain the action or for not making the effort. The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association. The action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to shareholders or members in such manner as the court directs.

**12.** In addition, because the language is identical (or, to be precise, identical "except for a deleted provision that pertains to practice in federal courts"), federal jurisprudence on the subject is instructive. *See A–Plus*, ¶ 21; *Gay v. Akin*, 1988 OK 150, ¶ 8, 766 P.2d 985.

in the hands of the board of directors." *Johnson v. Hui,* 752 F.Supp. 909, 911 (N.D.Cal.1990). "The demand requirement is ... primarily addressed to the question of *who* will pursue the claim—the corporation through its directors or the shareholder in a derivative suit." *Evangelist v. Fid. Mgmt. & Research Co.,* 554 F.Supp. 87, 90 (D.Mass. 1982) (citation omitted).

The business judgment rule ... may permanently cut off the plaintiff. It determines the extent to which the directors' response to a demand should be binding on the court. The rule originated as a means of limiting liability of corporate officers and directors for mere mistakes or judgment errors so as to give them the latitude they need to run a corporation; courts will not second-guess their decisions if made honestly, in good faith and in pursuit of legitimate corporate purposes.

*Id.* at 90–91 (citation omitted). *See also Laufer v. Olla Indus., Inc.,* 96 F.R.D. 230, 233 (S.D.N.Y.1982) *aff'd,* 729 F.2d 1444 (2d Cir.1983) ("A salutary purpose of the demand requirement is to protect corporate directors from harassment by litigious dissidents."). *See generally Westmoreland Cnty. Employee Ret. Sys. v. Parkinson,* 727 F.3d 719 (7th Cir.2013).

13. Clearly, demand futility cannot be met because Egleston entrusted his claims with Chesapeake and, in the prior action, Chesapeake's rejection was found to constitute a proper exercise of business judgment. It is also clear that Egleston cannot show the Board rejected his demand in violation of the business judgment rule because the contrary determination was made in the prior appeal, and that determination became final. "[A] final judgment on the merits of an action precludes the parties from relitigating not only the adjudicated claim, but also any theories or issues that were actually decided, or could have been decided in that action[.]" *Ingram v. Knippers,* 2003 OK 58, ¶ 18, 72 P.3d 17 (internal quotation marks omitted) (citation omitted).

14. *See Mobbs v. City of Lehigh,* 1982 OK 149, ¶ 7 n. 5, 655 P.2d 547 ("[The doctrine of claim preclusion] operates to bar all theories and all issues of fact or law which were litigated or which could have been litigated."). *See also* n. 13, *supra.*

15. "The doctrine of claim preclusion is designed to prevent piecemeal litigation through the splitting of a single [cause of action] into separate lawsuits." *Miller v. Miller,* 1998 OK 24, ¶ 23, 956 P.2d 887. *See also McDaneld v. Lynn Hickey*

¶ 19 Egleston has *already made a demand* on Chesapeake's Board that it undertake action regarding the mismanagement complaints. Chesapeake *properly rejected that demand in compliance with the business judgment rule* as determined in *McClendon,* 2014 OK CIV APP 11, 318 P.3d 210. Consequently, Egleston cannot satisfy the requirements of § 2023.1. In particular, Egleston, as a matter of law, cannot now (1) allege that a demand against Chesapeake would be futile (that is, demand futility is inapplicable), or (2) allege that Chesapeake's rejection was unreasonable and in violation of the business judgment rule.[13] Therefore, Egleston cannot pursue further action with regard to the same underlying circumstances, and the trial court properly granted summary judgment in favor of Chesapeake.

¶ 20 In this regard, we note that the doctrine of claim preclusion in Oklahoma further supports our decision,[14] and our determination is consistent with the various purposes of that doctrine.[15] Egleston entrusted the Board with his claims related to McClendon's misconduct, and a determination (now final) was made by a separate division of this Court that the Board's denial "constituted a reasonable exercise of business judgment." Fur-

*Dodge, Inc.,* 1999 OK 30, ¶ 8, 979 P.2d 252 (The purpose of the doctrine of claim preclusion "is to prevent multiplicity of litigation" over the same event or related events); *Dearing v. State ex rel. Comm'rs of Land Office,* 1991 OK 6, ¶ 7, 808 P.2d 661 ("The most often stated rationale for the doctrine is that public policy requires there be an end to litigation.") (footnote omitted). The doctrine is "based largely on a policy of conserving judicial resources by avoiding needless relitigation of closely related issues. Judicial economy and efficiency in the system are promoted when all issues related to the same transaction (or occurrence) can be resolved in the same case." *McDaneld,* ¶ 8.

The purposes of *res judicata* /claim preclusion ... [is] to relieve the parties of the cost and vexation of multiple lawsuits, conserve the resources of the judiciary, and by preventing inconsistent decisions, encourage reliance on adjudication.... In essence, preclusion doctrine fosters the important goal of affording finality to litigation where the same parties or their privies have once had a full and fair opportunity to litigate their claims.

*Feightner v. Bank of Okla., N.A.,* 2003 OK 20, ¶ 15, 65 P.3d 624 (citations omitted) (footnote omitted).

ther investigation of these same and related events by Egleston would constitute needless relitigation, and would subvert the basic principles of corporate governance discussed herein.

## CONCLUSION

¶ 21 Under the particular circumstances presented, Egleston may not pursue a § 1065 action to compel inspection of corporate records related to a prior demand. Consequently, we affirm the trial court's Order.

¶ 22 **AFFIRMED.**

RAPP, P.J., and THORNBRUGH, J., concur.